UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL NO. |
| v. ) | 3:12-CR-104 (EBB) |
| ) | |
| JEFFREY BENTON ) | AUGUST 6, 2013 |
| ) | |

## RESPONSE TO THE GOVERNMENT'S POST-HEARING MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS

The Defendant, JEFFREY BENTON, by and through his undersigned counsel, hereby responds to the government's post-hearing memorandum regarding Mr. Benton's motion to suppress, filed July 30, 2013. As previously argued by Mr. Benton in his original motion to suppress and in his post-hearing brief filed July 30, 2013, Mr. Benton continues to argue that all of the evidence seized at the time of his arrest should be suppressed.

### I. FACTS NOT IN DISPUTE

In its brief, the government argues that there are many facts not in dispute between Mr. Benton and the government. This being the case, however, Mr. Benton still argues that these facts should lead this court to grant the motion to suppress rather than to deny it.

First, there is no dispute that when Officer Rivera "knocked" on the door, the door swung open and no occupant of the apartment allowed the officers entrance. This should be the end of the court's inquiry, as the government has admitted that they entered a dwelling, which was not the residence of Mr. Benton, without a search warrant and without consent from any occupant of the apartment. The officers had no right to enter

1

the apartment without a search warrant and without consent, even if they believed the person sleeping in the living room was Mr. Benton. The officers should have announced their presence and requested Mr. Benton show himself. In addition, although there was no testimony that the officers forced their way into the apartment, this is only because every occupant was sleeping and, therefore, they all have no idea how the door swung open upon the knocking of the officers. By the testimony of Mr. Cortes, however, that she always locks her doors, Mr. Benton guesses and implies that the officers' knock was very forceful and powerful enough to open a locked door. Thus, Mr. Benton continues to contend that the officers forced their way into an apartment, where he was staying as an overnight guest, without a search warrant and without consent of the occupants. Because the officers made an illegal entry into the apartment, anything later found in the apartment should be suppressed as fruit of the poisonous tree.

Second, there is no dispute that Ms. Cortes was able to speak to her mother, Ms. McCrea, during the period in which Officer Rivera was attempting to have Ms. Cortes consent to the search of her apartment. Even though both sides agree that Ms. Cortes had the opportunity to confer with her mother, this does not mean there was no coercion. The officers merely exercised the same coercion over Ms. McCrea as well, who, in turn, used her influence to persuade her daughter to sign the consent to search form. If the officers exerted coercion over both Ms. Cortes and Ms. McCrea, however, it does not negate their coercion when Ms. McCrea repeated those same lies to Ms. Cortes.

Third, there is no dispute that more than five minutes elapsed between the time the officers entered the apartment and Ms. Cortes allegedly gave her consent to search. By eliciting testimony about this subject at the hearing, Mr. Benton was merely trying to

show that Officer Rivera's report was faulty and did not include all relevant information about the events of that day. Because the report was faulty, this provides further evidence that other information given by Officer Rivera could also be faulty, including the statements he made to Ms. Cortes to have her sign the consent to search form.

Finally, there is no dispute that the consent to search form, upon which Ms. Cortes scribbled her name, contains the statements "I have not been threatened, nor forced in any way" and "I freely consent to this search." By pre-printing these statements on a form, however, this does not negate any coercion that may occur verbally. Ms. Cortes felt that she had no choice but to sign the form and allow the search because, if she did not, the officers told her she would be arrested and DCF would be called. She believed that not only her own freedom was on the line, but also the custody of her children. As a mother protecting her children, Ms. Cortes signed the consent to search form under protest. Ms. Cortes did not write these statements on the form that she was freely consenting and not being forced in any way. These are pre-printed statements on a form that she felt she had no choice but to sign. Thus, these statements also do not negate the coercion that took place on the morning of May 17, 2012.

Even with all of these facts not in dispute, Mr. Benton still argues that this court must grant his motion and suppress all evidence recovered from 719 Orchard Street during his arrest.

## II. THE DEFENSE WITNESSES ARE CREDIBLE

The government attempts to argue that the defense witnesses are not credible because there is testimony that conflicts with the Affidavit of Ms. Cortes, because the witnesses are contradictory, because the testimony defies logic, and because the

3

witnesses have a strong bias to distort their testimony. Mr. Benton argues that all of these statements are completely false. Mr. Benton further argues that the court should examine his motion to suppress on its merits by examining the law and the facts relevant to the topic, and should leave any superfluous or irrelevant facts out of its inquiry.

    A.    <u>Alleged Contradictions to the Affidavit</u>

Although the government would like to create a conflict between the affidavit and the testimony, no such conflict exists.

First, the government argues Ms. Cortes' affidavit states that Mr. Benton had a change of clothes for the following day, but she later testified that Mr. Benton did not bring a change of clothes with him. Mr. Benton, however, was wearing clothes when he arrived at Ms. Cortes' apartment and testified that he was naked when the officers arrived. Therefore, his "change of clothes for the following day" was actually the clothes he was wearing and not any clothes that he carried into the apartment with him. Furthermore, Mr. Benton testified that he carried his car keys and his DMV registration with him to the apartment, but this also does not conflict with the affidavit, which never mentions these few small items Mr. Benton brought with him.

In addition, the government argues that just because Mr. McCrea did not see any law enforcement officers walk into his sister's bedroom, this somehow contradicts the affidavit and testimony of Ms. Cortes. Just because Mr. McCrea was either not paying attention to what happened or did not remember what happened does not mean that his testimony is in contradiction to anything. Mr. McCrea testified that he did not see this occur, but he did not testify that no officers walked into the bedroom. He merely did not see it. Mr. McCrea was in the living room, which is down the hall from Ms. Cortes'

4

bedroom. There were also a lot of officers there that morning and a lot of chaos, especially after Mr. McCrea was woken abruptly by police officers after sleeping at 5:45 in the morning. Thus, just because Mr. McCrea did not see it, does not mean it did not happen.

Moreover, just because Ms. Cortes' affidavit stated that two officers walked into the bedroom and during the hearing she stated that she did not know how many officers entered her bedroom, this also does not mean that she contradicted her affidavit. Ms. Cortes made this affidavit in November 2012, which was just six months after the arrest. This hearing occurred more than seven months after Ms. Cortes made this affidavit. It is possible she forgot how many officers she saw fourteen months prior, or it is possible she was nervous on the stand. Either way, it is not a contradiction.

Furthermore, the government argues that the affidavit discusses Mr. Benton yelling something from the living room, but neither Mr. McCrea nor Ms. McCrea ever made mention of Mr. Benton yelling anything to Ms. Cortes. Again, just because neither of these witnesses paid attention to everything that was going on that morning, or may have forgotten by the time the hearing occurred, does not mean that Mr. Benton did not yell anything. In addition, this is not a contradiction. Neither of these witnesses testified that Mr. Benton did not yell anything, but they merely made no mention of Mr. Benton yelling anything. Thus, just because Mr. McCrea and Ms. McCrea did not testify to these facts does not mean they did not happen.

None of these facts contradict the affidavit, and none of this testimony undermines the credibility of Ms. Cortes as a witness.

B.  Alleged Contradictions Among Defense Witness Testimony

The government also attempts to argue that the defense witnesses contradict each other, but Mr. Benton argues that this is simply not true.

First, the government tries to argues, again, that because Mr. McCrea testified he did not see officers enter the bedroom, this somehow contradicts the other witnesses that say the officers did enter[1]. As argued previously, however, just because Mr. McCrea did not notice this happening does not mean it did not happen. There was a lot going on the morning of Mr. Benton's arrest and there were a lot of people in the apartment. Mr. McCrea might not have been paying attention or may have forgotten after fourteen months, but this does not mean he contradicts any of the other witnesses.

Furthermore, just because Ms. Cortes testified that she did not know how many officers entered her bedroom does not mean she is contradicting her mother, who stated that two officers entered. Ms. Cortes may have forgotten or may have been nervous on the stand, but this does mean there is a contradiction.

Moreover, the government attempts to make an issue of the fact that Ms. Cortes and Mr. Benton differ on when their relationship began. Just because two people do not know the date on which they officially began dating, exclusive of other people, does not mean there is a contradiction to their testimony. In addition, these facts have nothing at all to do with whether the officers disregarded the Fourth Amendment rights of Mr. Benton and Ms. Cortes by entering the apartment without a warrant and whether any

---

[1] The government also attempts to argue that, as previously argued, the defense witnesses contradicted themselves regarding whether Mr. Benton was yelling something to Ms. Cortes from the living room regarding her signing the consent to search form. As argued above, Mr. McCrea did not hear anything being said by Mr. Benton, but it could be that he was not paying attention, was distracted by everything else going on, or merely forgot by the time of the hearing. The same argument holds true for Ms. McCrea. Just because these witnesses did not pay attention to everything that was happening at the same time does not mean they contradicted each other. These witnesses never said Mr. Benton did not say anything, but they only said they did not hear him.

evidence found should be suppressed. Thus, Mr. Benton urges this court to disregard any of this superfluous argument that appears only to cloud the issues presented.

In addition, the government argues that because Ms. McCrea never stated that Ms. Cortes stated that she was not signing anything when she signed the consent to search form, that contradicts Ms. Cortes testimony, which was that she did make that statement. This is not a contradiction, however, as Ms. McCrea was never asked this question during her testimony and, thus, it does not mean she did not hear it. It merely means that she did not testify about it.

Finally, the government argues that there were contradictions about whether Ms. Cortes locked her apartment door, and the government stated that there was no testimony that Ms. Cortes returned to the living room to lock her door after Mr. Benton entered for the evening. Just because Ms. Cortes was not asked this question, however, does not mean it did not happen. Ms. Cortes was asked, however, if she always locks her bedroom door and if the door was locked that evening. She answered both of these questions in the affirmative. Furthermore, this argument also has no bearing on whether or not the court should suppress this evidence, as this information only relates to whether or not the officers were allowed access by the occupants of the apartment. As the government identifies in his brief, there is no dispute that no one answered the door for the officers and no one gave the officers consent to enter. Therefore, this information is also superfluous and should not be considered by the court in deciding whether or not to grant the motion to suppress.

Even though the government would like this court to think there are many contradictions in the testimony of the witnesses, when viewed individually, it is apparent

7

that there is no definite contradiction at all. Some witnesses may testify to slightly different things, but that does not mean that these witnesses contradict each other and it certainly does not mean that any witness is not telling the truth. The truth lies in what each witness remembers from that day and in how closely each witness was paying attention that day.

C.     Alleged Conflicts With Law Enforcement

Mr. Benton agrees with the government when it states it is no surprise that the defense witnesses contradict the testimony of law enforcement, but this definitely does not mean the defense witnesses are the ones who are wrong. It also definitely does not mean that law enforcement provides a more logical sequence of events.

First, the government attempts to make an issue of Ms. Cortes and Mr. Benton stating it took them 2-3 minutes to get dressed, while Officer Rivera stated it took 30-60 seconds for the door to be opened. When talking about such a small difference in time, Mr. Benton fails to see how it makes a difference to the issues presented in the motion to suppress. Witnesses who do not look at a watch or a clock can differ on their estimates of the amount of time it takes to do something, and it does not mean anyone is wrong. It merely means that each person estimates, or guesses, differently. Furthermore, the amount of time it took for Mr. Benton to come out of the bedroom, whether it be 30 seconds or two minutes, has nothing at all to do with whether the officers invaded Mr. Benton's Fourth Amendment rights when these seized evidence without a warrant. It appears to be one more item the government is putting in its brief to cloud the issues for the court[2].

---

[2] The government also tries to claim that none of the defense witnesses made any sincere effort to determine the source of the guns and drugs found in the apartment on that morning. Again this issue

8

Second, the officers obviously testified that there was no law enforcement that entered the bedroom before the consent to search form was signed because they know the law and they know that this is not allowed. Thus, even if there were officers who entered the bedroom before the consent to search form was signed, it is doubtful that any officer would admit to such illegal behavior on the stand. The defense witnesses, who were present in the apartment, testified that the officers did enter. It is then up to the court to determine which side to believe and which side has the more logical conclusion.

Mr. Benton argues that his conclusion is most logical. Officers admittedly entered the apartment of Ms. Cortes without a warrant and without consent. The officers then proceeded to secure the apartment, where they had no legal authority to be in the first place, under the pretext of officer safety. Officers went into the bedroom to "secure" the area, and saw some children's clothing and other items there. Thus, when Officer Rivera was trying to convince Ms. Cortes to sign the consent to search form, it is logical to conclude that he would make certain statements that would persuade her. Officer Rivera knew that the officers could obtain a search warrant if they wished, and, therefore, he told her that if she did not consent, they would get a warrant and search anyway, and, therefore, she should just consent now. It is also logical to think he would not wish to go through the hassle of applying for a search warrant and would rather not waste the time, considering he was already in the apartment and could search at that time. Thus, Officer Rivera told her that if he was forced to go through the hassle of leaving, obtaining a warrant, and then returning, that every person in the apartment could and would be charged with any contraband found. Officer Howard admitted that these kinds of

---

should have nothing at all to do with the legal claims raised in the motion to suppress, which is whether the officers invaded the Fourth Amendment rights of Mr. Benton by searching without a warrant and without proper consent. This is one more way for the government to cloud the issues for the court.

9

statements have been used with individuals in the past, and, thus, it is logical to think this statement was also told to Ms. Cortes. How else would she know this is the tactic sometimes used by officers in seeking consent? Furthermore, because Officer Rivera had already seen children's clothing and items in the apartment, it is logical to think he also might have used DCF as a means to get consent, even if he did not yet see a child in the apartment[3]. He admitted that he told Ms. Cortes to consent because they wished to find any items that might be harmful to children. Thus, it is logical to think he would go one step further and state that if she did not consent to remove any items that might be harmful to children, that he would call DCF to let them know she kept harmful items in her apartment.

The government attempts to argue that the testimony of defense witnesses defy logic and common sense and is also tainted by a strong bias. Mr. Benton would argue, however, that the same could hold true for the officers' testimony. It is not logical that the officers would not let Ms. Cortes know that they could obtain a warrant, without her consent, and that they would search anyway. It is not logical to think the officers would not say anything they could to obtain that consent so that they could search immediately. It is not logical to think that the officers would try to persuade Ms. Cortes to sign by discussing the harmful nature of some items to children without then taking it a step further and mentioning DCF could get involved if there were any harmful items found. The officers' testimony is also tainted by a strong bias and distortion of the truth because they know that if they did anything legally wrong that day, evidence will be suppressed and their jobs may be on the line.

---

[3] Furthermore, Officer Rivera could see that Ms. Cortes was very pregnant at the time of Mr. Benton's arrest. Thus, if Officer Rivera was threatening to arrest Ms. Cortes, that would have an impact on her life after her baby was born, which would necessitate having DCF get involved in the case.

Thus, Mr. Benton argues that his witnesses did not contradict each other or the affidavit, and the court should follow the logical conclusion that was presented by the defense witnesses. Mr. Benton argues that this court should grant his motion to suppress.

## III. **CONCLUSION**

The Defendant, Jeffrey Benton, urges this court to examine only the relevant legal and factual issues presented by his motion to suppress and subsequent hearing. The law enforcement officers entered the apartment of Kawya Cortes without a warrant and without consent to enter. Because Mr. Benton did not live in the residence, the officers needed either a warrant or consent to enter. They had neither, and, therefore, the officers made an illegal entry into 719 Orchard Street on May 17, 2012. That taint was never dissipated and was, in fact, made worse by the illegal entry into Ms. Cortes' bedroom and the coercive tactics used to obtain her signature on a consent to search form. Because of the actions of the officers on the morning of the arrest, anything recovered from the apartment must be suppressed. Mr. Benton respectfully requests that this court grant his motion to suppress.

Respectfully submitted,
DEFEDANT:
JEFFREY BENTON

By Jodi Zils Gagné (# Ct24376)
LAW OFFICES OF JODI ZILS GAGNE, LLC
P.O. Box 4023
Bristol, CT 06010
Tel:   (860) 582-4495
fax:   (860) 582-8397
email: jgagne@zilsgagnelaw.com

## CERTIFICATE OF SERVICE

  I hereby certify that on this date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                Jodi Zils Gagné