UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 3:12cr104(EBB) |
| | : | |
| v. | : | |
| | : | |
| RICHARD ANDERSON, et al. | : | October 18, 2013 |

GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENSE MOTIONS *IN LIMINE*

Per the schedule set by the Court at the October 4, 2013 status conference, the Government files this consolidated response to the various motions *in limine* submitted by the defendants proceeding to trial in this matter. The Government respectfully submits that the defense motions should be denied.

Defendants Philip Bryant and Richard Anderson filed motions for the production of agent notes. *See* Dkt. Nos. 1345, 1346, and 1355. Defendant Bryant also filed a motion to preclude the Government from introducing any evidence of his involvement with firearms, gangs, and acts of violence. *See* Dkt. Nos. 1347 and 1348. Defendant Pierre Galan filed a motion to preclude the Government from introducing his recorded statements. *See* Dkt. No. 1372. The Government addresses each motion in turn.[1]

---

[1] The Government filed a motion *in limine* seeking to limit the cross-examination of DEA Task Force Officer Dedric Jones ("Jones"). *See* Dkt. No. 1373. Specifically, the Government moved to preclude any questioning of Jones regarding his knowledge of his sister's "purported romantic relationships" with certain individuals (none of whom are defendants proceeding to trial in this matter) and "his omission of his sister's relationships with these three individuals from wiretap affidavits." *Id.* at 2. The Government's motion *in limine* drew an opposition from defendant Bryant. *See* Dkt. No. 1377. In his opposition, defendant Bryant contends that he should be permitted to use the "information contained in the wiretap affidavit[s] . . . to cross-examine, impeach, and otherwise attack the credibility of Dedric Jones." *Id.* at 2. Defendant Bryant provides two excerpts from two different wiretap affidavits related to co-defendant Kevin Wilson's post-arrest statement and Jones' conclusions regarding the candor of that statement, which defendant Bryant presumably would like to reference in his cross-examination of Jones. *Id.* at 2. But it appears that defendant Bryant misreads the Government's motion *in limine*. The Government's motion seeks only to limit the cross-examination of Jones on the issue of his sister's purported romantic relationships with individuals charged as a result of the underlying

I.       **Motions for the Production of Agent Notes (Dkt. Nos. 1345, 1346, 1355)**

Defendant Bryant "moves that any agents' notes taken of any proffer session or statements involving himself or any potential witness who will testify at trial pertaining to him be disclosed forthwith." Dkt. No. 1345; *see also* Dkt. No. 1346. Defendant Anderson has filed a nearly identical motion and supporting memorandum. *See* Dkt. Nos. 1355 and 1355-1.[2] The Government opposed a similar motion in the Government's Omnibus Response to Defendants' Pretrial Motions, *see* Dkt. No. 702 at 13-14, and continues its opposition.

As set forth in the Government's Omnibus Response, the Government has preserved agent notes of interviews with all witnesses, including any notes of interviews of the defendants and cooperating witnesses. Moreover, the Government is aware of its disclosure obligations under *Brady*, *Giglio*, the Jencks Act, and this Court's Standing Order and will comply with those

---

investigation. There may be other reasons why it would be improper for defendant Bryant to cross-examine Jones regarding the credibility of Wilson's post-arrest statement, but that issue plainly is not the subject of the Government's motion *in limine*. Accordingly, the Government does not address defendant Bryant's opposition in the text.

[2] Moreover, in a telephone conversation with undersigned counsel for the Government, counsel for defendant Robert Santos inquired whether the Government intended to disclose agent notes. Counsel for defendant Santos identified what he perceived to be a discrepancy between the DEA report memorializing co-defendant Kevin Wilson's post-arrest statement (authored by DEA Task Force Officer Dedric Jones ("Jones")) and references to that post-arrest statement in affidavits in support of wiretap applications (for which Jones served as the affiant). Specifically, counsel for defendant Santos stated that the relevant DEA report makes no reference to Jameel Wilkes, but the affidavits indicate that Jones did not find Wilson's post-arrest statement to be fully reliable because Wilson claimed that he did not know Wilkes. Counsel for defendant Santos thus reasoned that the notes related to Wilson's post-arrest statement must contain some information regarding Wilkes. The undersigned has reviewed Jones' notes related to Wilson's post-arrest statement and they make no mention of Wilkes. The disclosure of Jones' notes thus would not provide defense counsel with any additional information beyond that contained in the Jones report. If contrary to the Government's position, the Court believes that these particular notes (or all of the agent notes from the underlying investigation) require *in camera* screening, then the Government will provide such notes for the Court's review. But to be clear, the Government continues to oppose the need for *in camera* review or any other disclosure of the agent notes.

obligations.  The Government will screen agent notes for *Brady* and *Giglio* material and any such material will be disclosed.

But under Second Circuit precedent, the Government is not required to disclose such notes to the defendants.  Notes of agents or investigators made during a witness interview do not constitute Jencks Act material as defined by Rule 16.  *See United States v. Koskerides*, 877 F.2d 1129, 1133 (2d Cir. 1989).  In *Koskerides*, the Court held that the production to the defendant of an interview memorandum prepared by the agents after an interview of the defendant constituted full compliance with Rule 16(a)(1)(A) by the Government.  *See also United States v. Elusma*, 849 F.2d 76, 79 (2d Cir. 1988) (holding that notes incorporated into formal reports need not be preserved); *but see United States v. Ferguson*, 478 F. Supp. 2d 220, 237-38 (D. Conn. 2007) (directing production of agent notes of defendants' interviews).

In short, controlling precedent holds that notes of law enforcement agents are not witness statements within the meaning of the Jencks Act.  Accordingly, the motions seeking the production of agent notes should be denied.[3]

### II.   Motion to Preclude Evidence of Involvement with Firearms, Gangs, and Acts of Violence (Dkt. Nos. 1347 and 1348)

Defendant Bryant moves to preclude the Government from introducing any evidence of his involvement with firearms, gangs, and acts of violence.[4]  *See* Dkt. Nos. 1347 and 1348.  In

---

[3] Moreover, to the extent defendants Bryant and Anderson seek the immediate production of such notes, their motions should be denied.  Even if the Court were to consider such notes to be Jencks Act material, the Jencks Act provides for the disclosure of witness statements only "after a witness called by the United States has testified on direct examination."  18 U.S.C. § 3500.  The Second Circuit consistently has held that a district court's "power to order pretrial disclosure is constrained by the Jencks Act," and that the district court may not order advance disclosure inconsistent with the Jencks Act.  *United States v. Coppa*, 267 F.3d 132, 145, 146 (2d Cir. 2001); *see also United States v. Sebastian*, 497 F.2d 1267, 1268-69 (2d Cir. 1974); *United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) ("the district court did not have the statutory authority to compel disclosure [of Jencks Act material], over the government's objection, prior to trial").  Nothing in Fed. R. Crim. P. 16(a) alters the controlling authority of the Jencks Act or the Second Circuit case law cited above.

the memorandum of law in support of his motion, defendant Bryant cites to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Federal Rules of Evidence 402 and 404(b).  *See* Dkt. No. 1348 at 1.  But defendant Bryant appears to focus his firepower on a Rule 403 argument that evidence of his involvement with firearms, gangs, and acts of violence is irrelevant to the drug conspiracy offense with which he is charged and would be unfairly prejudicial. *See* Dkt. No. 1348 at 4-6.

At this time, the Government does not intend to introduce any evidence of defendant Bryant's involvement with gangs and acts of violence in its case-in-chief.  *See* Dkt. No. 1373 at 8.  But defendant Bryant's involvement with firearms carries tremendous probative value.  Accordingly, the Government intends to introduce several intercepted telephone communications between defendant Bryant and co-defendant Kevin Wilson in which they discuss firearms shared by members of the narcotics trafficking conspiracy charged in Count One of the Superseding Indictment.

**Probative Value.**  Such intercepted communications are not only relevant, but also carry tremendous probative value.

---

[4] Without discussion, defendant Bryant also contends that the Government should be precluded from offering any evidence related to his prior convictions, other charged offenses, and "any 'bad acts' or uncharged crimes attributed to the defendant."  Dkt. No. 1348 at 1.  As set forth in the Government's Omnibus Response to Defendants' Pretrial Motions, at this time, the Government does not intend to introduce any such 404(b) evidence against any defendant in its case-in-chief.  *See* Dkt. No. 702 at 12.  But the Government does not know at this time if, for example, through the cross-examination of a Government witness or through defendant Bryant's own testimony, defendant Bryant intends to suggest or argue mistaken identity, lack of motive, or lack of intent or knowledge.  If defendant Bryant were to raise such an issue, then, if relevant, the Government may offer evidence of his prior convictions, other charged offenses, or uncharged crimes and other bad acts to rebut such an argument or assertion.  The Government will advise defense counsel and the Court in advance that it plans to offer such evidence so that defendant Bryant may assert a challenge to the admissibility of that evidence.

Evidence of defendant Bryant's involvement with firearms is direct evidence of his participation in the charged narcotics conspiracy. It is well-settled that firearms are a tool of the drug trade:

> As we have recognized in the past, "to substantial dealers in narcotics, firearms are as much tools of the trade as are the commonly recognized articles of narcotics paraphernalia." *United States v. Crespo*, 834 F.2d 267, 271 (2d Cir. 1987); *see also United States v. Bermudez*, 529 F.3d 158, 170 (2d Cir. 2008) ("It is axiomatic that drug dealing and guns go hand in hand.").

*United States v. Batista*, 684 F.3d 333, 343 (2d Cir. 2012); *see also United States v. Mitchell*, 328 F.3d 77, 83 (2d Cir. 2003) ("[O]ur circuit has long recognized the connection between drug trafficking and firearms, repeatedly permitting firearms into evidence as proof of narcotics conspiracies because drug dealers commonly keep firearms on their premises as tools of the trade.") (internal quotation marks omitted); *United States v. Vegas*, 27 F.3d 773, 778 (2d Cir. 1994) (recognizing that the Second Circuit "has repeatedly approved the admission of firearms as evidence of narcotics conspiracies, because drug dealers commonly keep firearms on their premises as tools of the trade") (internal quotation marks omitted); *United States v. Wiener*, 534 F.2d 15, 18 (2d Cir. 1976) ("Experience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment and other narcotics equipment."). And the sharing of firearms among co-conspirators of a narcotics conspiracy only underscores the tremendous probative value of this evidence. *Cf. United States v. Flaharty*, 295 F.3d 182, 200-01 (2d Cir. 2002) (rejecting a sufficiency-of-the-evidence challenge to narcotics conspiracy conviction where defendant sold firearms to purchasers jointly engaged in narcotics trafficking with intent that firearms sales would further narcotics trafficking business).

In short, the repeated discussions in wire intercepts between defendants Bryant and Wilson regarding the acquisition of and access to firearms, well known tools of the drug trade, only underscores the Government's theory of the case, as reflected in Count One of the Superseding Indictment, that both were confederates in a drug trafficking scheme.

But even assuming *arguendo* that the firearms discussed by defendants Bryant and Wilson in the intercepted communications were not directly related to the narcotics conspiracy charged in Count One of the Superseding Indictment, these communications remain tremendously probative of the nature of the relationship between defendant Bryant and his co-conspirators and therefore are admissible. "In a conspiracy case, 'other acts' evidence is admissible as background information, to demonstrate the existence of a relationship of mutual trust, or to enable the jury to understand how the illegal relationship between the co-conspirators developed." *United States v. Guang*, 511 F.3d 110, 121 (2d Cir. 2007) (internal quotation marks omitted). Indeed, "mutual trust" and "a longstanding relationship" are "considerations relevant to a jury's determination of whether a defendant was a member of a charged conspiracy." *United States v. Rojas*, 617 F.3d 669, 675 (2d Cir. 2010). The mutual trust inherent in the sharing of firearms among co-conspirators thus is extremely relevant to and probative of defendant Bryant's participation in the charged narcotics conspiracy.[5]

Accordingly, the intercepted communications related to defendant Bryant's sharing of firearms with his co-conspirators is relevant to and highly probative of his participation in the charged narcotics conspiracy.

---

[5] This reasoning applies with equal force to any testimony from a cooperating witness that defendant Bryant additionally was involved in the distribution of marijuana and oxycodone, controlled substances not specified in the Superseding Indictment. Put another way, the fact that defendant Bryant openly would discuss such drug trafficking with another individual reveals a level of trust and aspects of a relationship critical to the jury's evaluation of defendant Bryant's participation in the charged narcotics conspiracy.

**Minimal Prejudice**.  Moreover, any prejudice resulting from the admission of these intercepted communications is minimal and can be further minimized with an appropriate limiting instruction.

As defendant Bryant recognizes, other defendants proceeding to trial in this matter are charged with firearms offenses.  *See* Dkt. No. 1348 at 4.  Indeed, Count Four of the Superseding Indictment charges Gilbert Galan, Jr. with unlawful possession of ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and Count Five of the Superseding Indictment charges Pierre Galan with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Moreover, the Government intends to introduce evidence related to the recovery of yet another firearm from co-defendant Kevin Wilson's apartment on January 3, 2012 following his arrest.  Accordingly, evidence of firearms related to the charged narcotics conspiracy and/or defendant Bryant's co-conspirators will be admitted at the upcoming trial irrespective of the intercepted communications that defendant Bryant now seeks to exclude.  Any incremental prejudice that arises from the intercepted communications thus will be marginal.

Moreover, any such incremental prejudice can be further minimized with an appropriate limiting instruction.  *See United States v. Bermudez*, 529 F.3d 158, 162-63 (2d Cir. 2008) (emphasizing the use of limiting of instructions to "minimize any potential prejudicial effect").  Defendant Bryant has not been charged with any firearm offense.  Accordingly, the Government would have no objection to a properly crafted limiting instruction that highlights the lack of any firearm charge against this defendant and directs the jury that it may consider the intercepted communications at issue only in evaluating the credibility of the cooperating witness, the nature

of defendant Bryant's relationship with his co-conspirators, and his participation in the charged narcotics conspiracy.

In view of the other firearm evidence that plainly is admissible at this trial, the intercepted communications at issue will result—at worst—only in marginal incremental prejudice to defendant Bryant. Moreover, any such prejudice can be further minimized through the use of an appropriate limiting instruction.

**Conclusion.** Rule 403 of the Federal Rules of Evidence permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." The intercepted communications between defendant Bryant and co-conspirator Kevin Wilson related to shared firearms is plainly relevant to and highly probative of defendant Bryant's participation in the charged narcotics conspiracy and the nature of his relationship with his co-conspirators. Moreover, in view of the other firearm evidence admissible at this trial, any incremental prejudice to defendant Bryant from the admission of such intercepted communications is minimal and can be further minimized through the use of an appropriate limiting instruction. Accordingly, the Government respectfully submits that the risk of any unfair prejudice comes nowhere close to substantially outweighing the highly probative value of the intercepted communications. Defendant Bryant's motion should be denied.

### III. Motion to Preclude Recorded Statements of Pierre Galan (Dkt. No. 1372)

Finally, defendant Pierre Galan moves to preclude the introduction of "prior recorded statements allegedly between Defendant Pierre Galan and Defendant Wilson" as inadmissible hearsay. Dkt. No. 1372 at 1-2. But the statements of Pierre Galan intercepted during the underlying wiretap investigation are not hearsay; they are the statements of a party-opponent. And Rule 801(d)(2)(A) provides that a statement "offered against an opposing party" that "was

made by the party in an individual or representative capacity" is not hearsay.[6] Although the Court already has denied defendant Pierre Galan's motion to preclude his recorded statements, *see* Dkt. No. 1423, the Government includes this brief response for the sake of completeness.

### IV.  Conclusion

For the reasons set forth above and previously set forth in the Government's submissions in this matter, the Government respectfully submits that the various motions *in limine* submitted by the defendants proceeding to trial in this matter should be denied.

                                                Respectfully submitted,

                                                DEIRDRE M. DALY
                                                ACTING UNITED STATES ATTORNEY

                                                 /s/
                                                MARC H. SILVERMAN
                                                ASSISTANT UNITED STATES ATTORNEY
                                                Federal Bar No. phv04307
                                                157 Church Street, Floor 25
                                                New Haven, Connecticut  06510
                                                (203) 821-3700

---

[6] Moreover, the recorded statements of Kevin Wilson made during the same intercepted wiretap communications and the statements of other individuals (primarily defendant Galan's co-conspirators) in other intercepted wiretap communications are admissible against defendant Galan as non-hearsay pursuant to Rule 801(d)(2)(E), commonly referred to as the "co-conspirator exclusion."  And the recorded statements of Kevin Wilson in intercepted wiretap communications with defendant Galan separately are admissible to provide context to the recorded statements of defendant Galan.  *See United States v. Barone*, 913 F.2d 46, 49 (2d Cir. 1990) (justifying admissibility "to establish context for the recorded statements of the accused"); *see also United States v. Dambruck*, 270 F. App'x 30, 34 (2d Cir. 2008); (summary order); *United States v. Dupre*, 462 F.3d 131, 136-37 (2d Cir. 2006); *United States v. Woods*, 301 F.3d 556, 560-61 (7th Cir. 2002).

## C E R T I F I C A T I O N

I hereby certify that on October 18, 2013, the foregoing Government's Consolidated Response to Defense Motions *in Limine* was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/
MARC H. SILVERMAN
ASSISTANT UNITED STATES ATTORNEY