1               UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
2
  * * * * * * * * * * * * * *  x   Criminal Case
3                                    No. 3:12CR104(EBB)
  UNITED STATES OF AMERICA,      :
4              Plaintiff
                                  :
5          vs.                        February 6, 2014
                                  :   9:38 O'clock a.m.
6  RICHARD ANDERSON, PHILIP
  BRYANT, ROBERT SANTOS,          :
7              Defendants            New Haven, Connecticut
                                  :
8  * * * * * * * * * * * * * *  x

9                   TWELFTH DAY OF TRIAL

10         BEFORE THE HONORABLE ELLEN BREE BURNS
            SENIOR UNITED STATES DISTRICT JUDGE
11                 AND A JURY OF TWELVE

12 Appearances:
   For the Plaintiff:            S. DAVE VATTI, ESQ.
13                               MARC HARRIS SILVERMAN
                                 Assistant U.S. Attorneys
14                               157 Church Street
                                 New Haven, CT 06510
15
   For the Defendant:           NEAL PATRICK ROGAN, ESQ.
16 Richard Anderson             315 Post Road West
                                 Westport, CT 06880
17
   For the Defendant:           DAVID A. MORAGHAN, ESQ.
18 Philip Bryant                Smith, Keefe, Moraghan & Waterfall
                                 32 City Hall Center, Suite C
19                               PO Box 1146
                                 Torrington, CT 06790
20
   For the Defendant:           RICHARD A. REEVE, ESQ.
21 Robert Santos                Sheehan & Reeve
                                 139 Orange Street, Suite 301
22                               New Haven, CT 06510

23
   Court Reporter:              Thea Finkelstein RMR, CRR
24                               TheaFinkelstein@aol.com

25 Proceedings recorded by mechanical stenography, transcript
   produced by computer.

```
 1                    (In the absence of the jury.)

 2          THE COURT:  Good morning.

 3          MR. SILVERMAN:  Good morning, your Honor.

 4          MR. REEVE:  Good morning, your Honor.

 5          MR. MORAGHAN:  Good morning, your Honor.

 6          MR. ROGAN:  Good morning, your Honor.

 7          MR. VATTI:  Good morning, your Honor.

 8          THE COURT:  Please be seated.

 9          We have a note from the jury.  They are asking for,

10  I believe they're asking for, a phone call between Kevin

11  Wilson and Mr. Bryant, something to do with something inside

12  of a Ziploc bag when Kevin had Philip's phone, that's the

13  first thing; and --

14          MR. VATTI:  That's the note from the end of the day

15  Tuesday.

16          THE COURT:  We didn't answer it yet.

17          MR. SILVERMAN:  That's correct, your Honor.  The

18  parties discussed it this morning, and the proposal, we

19  believe they need to hear a readback of Mr. Wilson's testimony

20  having to do with a bag when he was handling Mr. Bryant's

21  phone, and as that transcript is read back by the court

22  reporter, she's already identified with the help of counsel

23  the portions that need to be read back, we'll play the calls

24  referenced at the same time.

25          THE COURT:  You've seen the note then.
```

```
 1            MR. SILVERMAN:  Yes, your Honor.

 2            MR. VATTI:  Your Honor, we've seen the note.  We've

 3       queued up those portions with our court reporter that the jury

 4       needs to hear back, along with the wire calls that are

 5       referenced in that testimony.  It's about six pages worth of

 6       readback and three phone calls, includes both the direct

 7       examination as well as Mr. Moraghan's cross-examination, so

 8       we're ready to go on that.

 9            THE COURT:  You believe this will satisfy this

10       inquiry?

11            MR. MORAGHAN:  Yes.

12            MR. REEVE:  And, your Honor, while we're bringing

13       the jury in -- I don't know, Patty, do you want to get the

14       jury?  We should get them -- but there are two other matters

15       we wanted to address.

16            One is, as your Honor might recall, on Tuesday

17       night, during the -- when the jury was in the courtroom, they

18       began to ask questions of counsel.  It put us in an awkward

19       position.

20            THE COURT:  I don't recall.  They were asking you

21       questions?

22            MR. REEVE:  They were.  They should not be talking

23       to counsel, and I think your Honor has to instruct them that

24       under the rules, we can't communicate in any way, other than a

25       written note to the Court.
```

```
 1              THE COURT:  Right.
 2              MR. REEVE:  That everything has to go through.
 3    Just like we can't talk to them in the hallway, I think you
 4    need to explain that the lawyers can't really answer
 5    questions, and we can't proceed in that manner.  "Everything
 6    has to be in writing to me" -- I mean you, okay?
 7              THE COURT:  Yes.
 8              MR. REEVE:  The other matter is the motion I filed
 9    yesterday.  I think we can talk about that after the jury is
10    out.  I don't want to delay their deliberations.
11              THE COURT:  No.
12              MR. REEVE:  My suggestion is we deal with those two
13    things now, bring them, you tell them what we discussed you
14    tell them, we go through the materials Attorney Vatti
15    referenced, have them go back to deliberate, and discuss the
16    motion I filed yesterday.
17              THE COURT:  I haven't had a chance to read it.
18              MR. REEVE:  I understand.  Your Honor might need
19    time to digest it, I understand.  For all those reasons, I
20    think that's the joint proposal of counsel.
21              THE COURT:  I didn't know whether the government
22    wanted to submit a written response to Mr. Reeve's --
23              MR. VATTI:  No, I'm prepared to respond verbally,
24    your Honor.
25              THE COURT:  All right.  What we're going to do is
```

```
 1    take care of the jury first.

 2              MR. VATTI:  Yes.

 3              MR. REEVE:  Yes.

 4              MR. MORAGHAN:  Your Honor, can I add on to what Mr.

 5    Reeve said?  Jurors were firing questions from the box, not

 6    just at the lawyers, but at the Court.  It was really chaotic.

 7    Again, the individual jurors should not be asking questions.

 8    Again, it's all got to go through the foreperson, and if you

 9    could emphasize that, I think it's a step above that.

10              MR. VATTI:  I agree.

11              MR. REEVE:  Thank you, Judge.

12              THE COURT:  All right.  May we have them?

13              (In the presence of the jury:  9:44 o'clock a.m.)

14              THE COURT:  Good morning, ladies and gentlemen.  Are

15    you all here?  Okay.

16              We received your communication, ladies and

17    gentlemen, asking for the phone call between Mr. Wilson and

18    Mr. Bryant, something to do with something inside a Ziploc bag

19    when Kevin had Philip's phone and making sales for Philip

20    Bryant, more than one, a woman in the background, I don't

21    understand that, but I believe I'm reading it correctly.  We

22    believe we have come up with what you're looking for.

23              Now I also have a question from the jury, they are

24    asking for a transcript of Mr. Silverman's closing timeline.

25              MR. SILVERMAN:  Your Honor, here's what I would
```

1   propose:  That we proceed with the first note, the one from

2   Tuesday evening now.  The parties have come up with a way to

3   address that.

4               THE COURT:  Yes.

5               MR. SILVERMAN:  And then the jury leave the

6   courtroom, go back to their deliberations, and we'll figure

7   out how to address the new request collectively, and we can

8   bring them back if there's need for it.

9               MR. REEVE:  We agree, Judge, thank you.

10              THE COURT:  That's fine.

11              MR. SILVERMAN:  With respect to the first note, the

12  one from Tuesday evening, the parties have come up with a

13  proposal to address it in which our court reporter will read a

14  portion of Kevin Wilson's testimony that we believe is

15  directly on point.  As the court reporter reads that testimony

16  and any calls are mentioned, we'll play the calls just as they

17  were played during the course of his testimony.

18              There will be a short portion from his direct and a

19  short portion from his cross that we believe are on point to

20  the jury's question from Tuesday evening.

21              THE COURT:  Very well, we'll proceed with that.

22              MR. SILVERMAN:  Thank you, your Honor.

23              (Testimony from page 886, line 1, to page 890, was

24  read by the reporter.)

25              MR. SILVERMAN:  Government's Exhibit 109 is from

```
1    December 15th at 5:00 p.m.

2               (Government's Exhibit 109, an audio recording,

3    played.)

4               MR. SILVERMAN:  Government's Exhibit 114 is a call

5    on December 21st, 2011, at 6:29 p.m.

6               (Government's Exhibit 114, an audio recording,

7    played.)

8               (Testimony from page 1375, line 7, to page 1377,

9    line 8, was read by the reporter.)

10              MR. SILVERMAN:  Government's Exhibit 90 is on

11   September 13, 2011, at 4:42 p.m.

12              (Government's Exhibit 90, an audio recording,

13   played.)

14              THE COURT:  Does that respond to that first message

15   you sent to me, ladies and gentlemen?

16              All right.  Now you have your question with respect

17   to Mr. Silverman's closing timeline.

18              MR. REEVE:  Judge, I think by agreement, we would

19   like to discuss that, let the jury deliberate.

20              There was a second issue we talked about with your

21   Honor just before the jury came in.  I wonder if you could

22   talk to the jury about that issue.

23              THE COURT:  The conversation with counsel.

24              MR. REEVE:  Yes, please.  Please.

25              THE COURT:  Yes.  Ladies and gentlemen, there should
```

1   be no communication between you and counsel.  Anything you

2   want to know about, you should send a note to me, and there

3   should be no direct communication between you and counsel on

4   either side of this lawsuit, okay?

5           MR. REEVE:  Thank you, Judge.

6           MR. VATTI:  Thank you, your Honor.

7           THE COURT:  Thank you.

8           (In the absence of the jury:  9:56 o'clock a.m.)

9           THE COURT:  Okay, now what about this request with

10  respect to Mr. Silverman's closing timeline?

11          MR. SILVERMAN:  Your Honor, would you give us just a

12  minute to confer with one another?

13          THE COURT:  Okay.  I'm going to sit here, if you

14  don't mind.

15          MR. REEVE:  Thank you, your Honor.

16          (Counsel conferring.)

17          MR. VATTI:  Your Honor, I think we have an agreement

18  just on process.

19          THE COURT:  Yes, sir.

20          MR. VATTI:  Mr. Silverman's PowerPoint that he used

21  in closing argument is not in evidence, it's not an exhibit.

22  So I think we all agree it would be improper to show them that

23  during their deliberations.

24          What we can do is have our court reporter read back

25  those portions of the timeline that specified times and

1    events, and leave out the portions where Mr. Silverman

2    injected argument.  But the timeline referred to both Robert

3    Santos and Richard Anderson, and it was quite extensive.

4           I think what we're proposing to do is have the jury

5    brought back in and have your Honor inquire which aspects of

6    the timeline they are interested in, is it with respect to Mr.

7    Santos?  With respect to Mr. Anderson?  Or both?  I don't

8    think Philip Bryant was in the timeline.

9           MR. MORAGHAN:  Correct, he wasn't.

10          MR. VATTI:  He was not.  If we can get clarification

11   on that, we can send them back out and work with our court

12   reporter.

13          THE COURT:  So I'm to ask whether they want it with

14   respect to Mr. Anderson --

15          MR. VATTI:  Or Mr. Santos or both.

16          MR. REEVE:  I think we should set the tone right

17   now.  I think you should say to them:

18          This is the question we have.  We do not want you to

19   answer it in the open courtroom; we want you to send us a note

20   that describes in particularity.

21          Just so we get them in that pattern.

22          MR. ROGAN:  And, your Honor, one caveat to that

23   instruction to the jury:  I don't want to identify the

24   defendants by name.  I would ask the question just be posed,

25   you know, can you identify as to which defendant you want the

1   timeline?  I don't want to give them a choice.  The note

2   doesn't indicate that, so I don't want it to say pick from Mr.

3   Santos or pick from --

4            MR. REEVE:  I agree.  I think that's a good point.

5            MR. VATTI:  That's fine.  We want them to specify

6   which defendant they are interested in, as an open-ended

7   question.

8            MR. SILVERMAN:  But to be clear, we don't want them

9   to answer it here.  I think you want to start by saying:

10           We have received your last question, we're going to

11   endeavor to answer it, but what we need you to do is go back

12   to the jury room and send us a more specific note with regard

13   to what defendant or topics you want the timeline read back to

14   you.

15           And then they leave.

16           THE COURT:  Okay.

17           MR. ROGAN:  Has that been marked as a Court exhibit?

18           THE COURT:  No, but we will.  That would be Court

19   Exhibit 6, I think.

20           MR. ROGAN:  Yes, that's what we're up to, I think.

21           (In the presence of the jury:  10:03 o'clock a.m.)

22           THE COURT:  Ladies and gentlemen, we would like a

23   clarification of that second note you sent about Mr.

24   Silverman's closing timeline.  Did you want it with respect to

25   Mr. Anderson or Mr. Santos or both those gentlemen?

```
 1              MR. SILVERMAN:  And, your Honor, I think we were
 2    going to ask that the jury actually send us an additional note
 3    as clarification.
 4              THE COURT:  Would you do that, please?  Can you
 5    clarify that for us?
 6              MR. ROGAN:  Your Honor, before the jury goes out,
 7    can we approach, please?
 8              THE COURT:  Yes.
 9              (At the side bar.)
10              MR. ROGAN:  Your Honor, we had agreed that when you
11    read the -- asked for the clarification from the jury, that we
12    were not going to identify defendants by name; we were just
13    going to say tell us what defendants you wanted the timeline
14    on, and you identified Mr. Anderson and Mr. Santos.
15              THE COURT:  You didn't want me to identify them?
16              MR. ROGAN:  We just talked about that, your Honor, a
17    moment before the jury came in.  You were going to say
18    Anderson and Santos, and then you agreed that you would just
19    identify them by defendants.
20              THE COURT:  So I'm now to ask them to go back to
21    give us a new note and identify whom they wish this timeline
22    relate to?
23              MR. SILVERMAN:  I think they just drafted the note,
24    I think they have one now that's going to be ready for us.
25              MR. VATTI:  Yes, I think they just wrote it.
```

```
1            MR. ROGAN:  I would just ask your Honor just to
2   correct it by saying, "When I indicated the names of the
3   defendants, what I meant was I want you to tell us what
4   defendants, if any, you want the timeline on."
5            THE COURT:  Okay.  You think they've done another
6   note?
7            MR. SILVERMAN:  Yes.
8            MR. VATTI:  You can inquire.
9            (In open court.)
10            THE COURT:  Ladies and gentlemen, we would like
11   clarification from your request to indicate to us what
12   defendant specifically you want the timeline on.  Would you do
13   that?
14            You've done it, have you, ma'am?  All right.
15            Would you collect that note from the jury?
16            Both, the answer is both, for Robert Santos and
17   Philip Bryant.
18            MR. VATTI:  Your Honor, I think what we have to do
19   is since we've discussed that Mr. Silverman's PowerPoint was
20   not an exhibit in this case that was admitted --
21            THE COURT:  Yes.
22            MR. VATTI:  -- we cannot show the jury that
23   PowerPoint presentation.  What we would have to do is work
24   with our court reporter to identify those portions of the
25   closing that reference Mr. Silverman's timeline and have it
```

1    read back.

2         I would suggest now that we have the clarity that

3    the jury go back and resume their deliberations, and work with

4    the court reporter and queue up those portions of the readback

5    that would be necessary and responsive.

6         THE COURT:  We will follow that procedure then,

7    ladies and gentlemen, so please return to the jury

8    deliberation room so we can clarify that for you.

9         (In the absence of the jury:  10:11 o'clock a.m.)

10        MR. ROGAN:  Your Honor, could you read back the most

11   recent note they handed to you?

12        THE COURT:  "Both, for Robert Santos and Philip

13   Bryant and Richard Anderson."  Both, that's all three

14   apparently.  And that, gentlemen, would be Court Exhibit 7.

15        MR. REEVE:  Yes, your Honor, thank you.

16        Your Honor, while we're doing this, would it be okay

17   if Mr. Santos is excused?  We're just going to be talking

18   about this.  He'll be back before we call the jury back in.

19        Oh, your Honor, just for the record, I didn't ask

20   you on Tuesday night because of how hectic it was that we

21   didn't know then that the jury was going to be asked to come

22   in at 9:00.  Mr. Santos again had to leave his home early to

23   get here, and I just wanted to put on the record that I

24   advised him, because he was under a court order to be here,

25   that he was permitted to leave.  We are in contact with the

```
 1    probation office about that, but I just wanted to put it on

 2    the record at this point, so thank you.

 3              THE COURT:  Thank you.

 4              MR. ROGAN:  Your Honor, could I look at the Court

 5    exhibits?

 6              THE COURT:  Yes, of course.

 7              Okay, they want to see timeline for Philip Bryant

 8    and Richard Anderson.  This will be Court Exhibit 8.

 9              MR. MORAGHAN:  There is no timeline regarding Philip

10    Bryant.  I don't know if the government will stipulate to that

11    or not.

12              MR. ROGAN:  Can we stay on the record for a minute,

13    your Honor?  I want to clearly just preserve, anything that

14    Mr. Silverman said during closing argument or any PowerPoint

15    presentation that he made during closing argument, the jury

16    should not be permitted to review that transcript or get a

17    readback of the transcript.

18              We've been telling them from the beginning that

19    anything that was said is just that, it's argument.  It isn't

20    evidence.  So even showing them PowerPoint slides or

21    timelines, if it wasn't a document in evidence, I'm objecting

22    to them hearing anything having to do with any of that.  It's

23    going to be -- it's going to create a huge problem, your

24    Honor.  It's giving the government another chance to reinforce

25    whatever it is.
```

1        But more importantly, just from an evidentiary

2  standpoint, it's clearly improper for the jury to hear

3  anything that they either saw visually on the screen that was

4  not marked into evidence, or to get a readback.

5        THE COURT:  Is there something on the screen that

6  wasn't marked as evidence?

7        MR. ROGAN:  Yes, your Honor, I believe Attorney

8  Silverman did a PowerPoint, what we refer to as a PowerPoint

9  presentation which touched, I assume, as memory recalls, on

10  some items that are exhibits, but we can't get inside the

11  jurors' heads and say, "Okay, what do you want to hear?"

12        I make an objection, they get nothing, they don't

13  get a readback on his testimony, and they don't get to look at

14  a single thing from his PowerPoint presentation.

15        MR. VATTI:  Your Honor, I would agree they don't get

16  the opportunity to see the PowerPoint because it's not an

17  exhibit in this case.  However, your Honor instructed them

18  that the arguments of counsel are not evidence, but they may

19  consider those arguments if they are helpful to the

20  deliberations.

21        I would suggest that we read back those portions

22  that reference the timeline as they've asked -- they're

23  entitled to consider those as helpful to their

24  deliberations -- but your Honor can give the instruction again

25  that the arguments of counsel are not evidence and the actual

1    evidence in the case is the recordings themselves that are

2    referenced in the timeline, and that if they have any

3    questions regarding the content of those recordings, those are

4    the recordings that control, and the content that controls,

5    not the arguments of Mr. Silverman.

6         MR. ROGAN:  Respectfully, your Honor, not good

7    enough, in all due respect to Attorney Vatti.  That's giving

8    the government a second bite at the apple.  Of course they can

9    consider any argument that any of the four of us made during

10   the course of, in their deliberations, but they've got to go

11   by memory.

12        We can't be now re-pointing a roadmap:  Oh, you like

13   that point in Mr. Vatti's argument or Mr. Silverman's

14   argument, you get to hear that back.

15        If we're going to do that, and I'm not suggesting

16   that at all, let them rehear everybody's closing arguments.

17   That's why you don't do it, you can't do it.

18        Then sending them a note, you can't do that, "but if

19   there's anything that jumps to mind that you want to pull out

20   from his closing argument, we'll get you the corresponding

21   phone calls" again is improper.

22        Let this jury do their job according to the rules.

23   The only note they should get is you don't get to see the

24   timeline and you don't get to rehear the closing arguments.

25        I don't know if counsel joins in that.

1          MR. REEVE:  Judge, just for the record, we had an

2    informal conference with government counsel, and we were doing

3    this on the fly, trying to respond.  Giving a second thought

4    and listening to Attorney Rogan's argument, I agree with him.

5    I think we made a mistake, and we can correct the mistake

6    because we haven't gone further down that road.  We can just,

7    you can just say, upon reflection, everyone now agrees,

8    "Unfortunately we can't give you that information because it's

9    part of argument and it's not evidence in this case."

10         Now, it appears that the second note which I think

11   is Court Exhibit 8, is that right?

12         THE CLERK:  8 is what you have.

13         MR. REEVE:  Okay.  It appears that that supersedes

14   7, and they're only asking for Anderson and Bryant, not

15   Santos, because Santos appeared in 7.  So we're kind of doing

16   a little bit of deconstructing of their notes.  We agree that

17   there's no timeline with respect to Bryant.  It doesn't look

18   like they want a timeline with respect to Mr. Santos, but it's

19   a little bit unclear on the basis of these two notes.

20         But I think we have unanimity on the defense side

21   that Attorney Rogan, who it sounds like would be the only --

22   his client would be the only -- one who would get -- who would

23   be the recipient of a readback of portions of the government's

24   closing argument, we all three agree that would not be proper.

25         MR. MORAGHAN:  On behalf of Mr. Bryant, I do join in

1   Mr. Rogan's argument, your Honor.

2          THE COURT:  I gather what you want me to do is to

3   tell the jury that what they're asking for is from closing

4   argument of counsel, which is not evidence, and we're not

5   going to provide it for them, is that right?

6          MR. ROGAN:  Correct.

7          MR. REEVE:  I think, your Honor, you could say, "I'm

8   not going to," you could say, "The rules do not allow me to do

9   that," so they don't feel like any of us are withholding any

10   information in any way.

11          MR. VATTI:  I disagree that the rules don't allow us

12   to.  We instruct the jury in the jury instructions that they

13   may consider comments made in closing argument in their

14   deliberations, although it is not in and of itself evidence.

15          So I don't see why we can't, if they've asked for a

16   portion of the closing argument to consider in their

17   deliberations, why we shouldn't read that back to them, with

18   the caveat that it is not evidence.  Your Honor can give that

19   instruction.

20          But if your Honor chooses not to read that back,

21   then what I would suggest is that you inquire of the jury if

22   they wish, they have to identify particular exhibits that they

23   want -- if they want a timeline, they need to identify the

24   particular exhibits they're interested in listening to.

25          THE COURT:  Well, all right.  As I understand, the

1    consensus is that I'm going to tell the jury that the most

2    recent request they have involves the closing argument of

3    government counsel, which is not evidence, and they can

4    consider it for what it's worth for them, but it is not

5    evidence, and they're not going to get a transcript of it.

6                MR. SILVERMAN:  Your Honor, there's no consensus on

7    that.  The three defense attorneys would like you to take that

8    position; we disagree.

9                THE COURT:  Well, it's not evidence.

10               MR. SILVERMAN:  We agree with that.  The difference

11   is defense counsel believes you can't have any readback of

12   closing argument because it's not evidence; government counsel

13   believes you can have a readback, as long as it's accompanied

14   with the caveat that "it is not evidence, you can only use it

15   in your deliberations if it aids you but you must keep in mind

16   it is not evidence."  So there's consensus that it's not

17   evidence, but after that we part company.

18               MR. VATTI:  So your Honor will have to decide

19   whether it's going -- the closing argument portion is going --

20   to get read to them or not.

21               THE COURT:  The Second Circuit is going to have fun

22   with this case.

23               MR. VATTI:  It will.

24               THE COURT:  I'm sure there are going to be lots of

25   appellate issues.  All right.

```
 1              I gather, although there is not a consensus, my
 2    response should be that the timeline they would have reference
 3    to was referred to in the closing argument of government
 4    counsel.  Argument is not evidence.
 5              I'm not altogether certain whether I should have
 6    that portion of the closing argument read back, because this
 7    is what they're asking for, and they're going to be confused I
 8    think if we don't respond in some affirmative way to their
 9    request.  Can we do that, gentlemen, or no?
10              MR. REEVE:  No, your Honor.  And I think the defense
11    position is Attorney Silverman is exactly right, there is no
12    consensus.  And our position is if any part of Attorney
13    Silverman's closing argument is read back, any section of it,
14    then our position is all of the closing arguments in their
15    entirety need to be read back.  Anything else, if you're going
16    to go down that road, anything else would be unfair to all
17    three defendants who are on trial.
18              MR. ROGAN:  I've made my argument.  I concur.
19              MR. MORAGHAN:  Your Honor, on behalf of Mr. Bryant,
20    I agree.  If, however, you decide, on behalf of the
21    government, there is no timeline as to Mr. Bryant, and I would
22    like a stipulation to the jury that there is no timeline
23    regarding Mr. Bryant.
24              MR. VATTI:  I think in answer to their question,
25    your Honor, I have no objection to your Honor stating that the
```

1  response to their question as to Philip Bryant is there was no

2  timeline referenced in Attorney Silverman's closing argument

3  as to Philip Bryant.

4  I think the issue is whether or not, at this point,

5  the Court is going to permit a readback of the timeline that

6  was referenced in closing argument, with the limiting

7  instruction that it is not evidence.  That's the issue your

8  Honor's going to have to rule upon at this moment.

9  THE COURT:  I don't think I should read back.

10  There's a consensus here that this is not evidence, we all

11  agree, that the argument of counsel is not evidence.

12  MR. VATTI:  I agree with that principle, your Honor.

13  THE COURT:  I don't think any part of Mr.

14  Silverman's argument should be read back.

15  MR. VATTI:  Then I would suggest this, your Honor:

16  There is obviously something that they're interested in.

17  THE COURT:  Yes.

18  MR. VATTI:  So maybe we need more specificity on

19  what they're looking for.  Is it a particular -- right now

20  they've said timeline, timeline as to Richard Anderson as to

21  what?  And if they give us more specificity, perhaps we can

22  work out a way to respond to the question.

23  THE COURT:  All right.  Can we have them back,

24  please?

25  MR. ROGAN:  Your Honor, just quickly before the jury

1    comes out, like what happened a couple of minutes ago, if

2    you're going to mention defendants, I ask specifically that

3    you not mention defendants individually by name.  Again,

4    that's for the jury to get sorted out.  I don't want to hear --

5    sorry.

6           THE COURT:  I'm just going to refer to the fact that

7    they've asked for a transcript of the timeline.

8           MR. ROGAN:  I don't want them -- anything that

9    highlights Richard Anderson or Robert Santos or Philip Bryant

10   from the bench suggests something to them, and they've got to

11   sort this out, not us.  If it takes nine notes, I don't care.

12   But we certainly can't have any suggestion coming regarding

13   who you should be looking at or who you should be looking for.

14   I think your Honor agrees, based upon what you did before,

15   where we didn't identify defendants by name.

16          THE COURT:  I think the consensus is I'm simply

17   going to tell the jury that --

18          (In the presence of the jury:  10:25 o'clock a.m.)

19          THE COURT:  With respect to your most recent note,

20   ladies and gentlemen, asking for a transcript of the timeline

21   for Bryant --

22          MR. REEVE:  Your Honor, you might recall --

23          THE COURT:  Starting again, with respect to the most

24   recent request for the transcript of the timeline, that

25   timeline was referenced in the closing argument of Mr.

```
 1    Silverman.  Closing argument is not evidence, ladies and
 2    gentlemen.  It is just exactly what I said, argument.  So I am
 3    not going to provide any such transcript.  Okay?
 4              Is that satisfactory, gentlemen?
 5              MR. VATTI:  May we approach, your Honor?
 6              THE COURT:  Yes, please.
 7              (At the side bar.)
 8              MR. VATTI:  Your Honor, I think that I would request
 9    that you further instruct them that if there's something
10    specific that they are looking for in terms of a timeline as
11    to any defendant, that they let us know with greater
12    specificity, and then we can figure out what exhibits or
13    testimony might be responsive to their request.  And if they
14    are going to do that, that they go back to the jury room and
15    send us a further note.
16              MR. ROGAN:  Your Honor, absolutely not.  What we're
17    now doing is saying no, you can't have non-evidence back
18    there -- which is your correct ruling -- but now we're saying,
19    hey, but if there's anything you think you heard, just send us
20    a note back.  We're now providing additional instructions to
21    the jury.
22              Again, my point that I made before, it's up to these
23    12 folks that we've got left to figure out what it is they
24    want.  You told them it ain't evidence, you don't get to hear
25    it, end of conversation.
```

```
1              Otherwise we can just -- we'll be here all day,
2      saying, what they want.  Their job is to figure out what they
3      want to know.
4              They're now clear, "Anything Mr. Silverman said, I
5      can't give you, that's the law."  We've answered their
6      question, on to the next thing.
7              I disagree, with all due respect to Mr. Vatti, that
8      we are now supposed to give them additional instructions on
9      what exhibits they want.  They've got them all back there.  If
10     they want to hear them, they'll hear them.  It's their job,
11     it's their job, to figure out the timeline; not for us to help
12     point them in the direction.  If they figure it out, great; if
13     they don't, they don't.
14             MR. VATTI:  I don't have any objection to the Court
15     ruling that they can't hear the closing argument, other than
16     what we argued previously, but they clearly are interested in
17     something and I think it would be appropriate to tell them if
18     they are specific, we can respond to their inquiry with stuff
19     that's actually in evidence, but they just can't hear the
20     closing argument.
21             MR. ROGAN:  I didn't want to interrupt, your Honor.
22     You've already given them that instruction.  "If you want to
23     hear anything, you hear anything."  I'm sure they're
24     interested in a lot of stuff.
25             I'm interested in a fair trial for Mr. Anderson, and
```

```
 1   if we start to cross over into doing general inquiries about
 2   what you want to help us on, we've crossed over into the
 3   province of what the jury's supposed to be doing.  You told
 4   them in an hour-and-a-half, if you want something specific,
 5   and they've already done it.
 6        When we were here Tuesday night, they wanted to hear
 7   the direct examination and cross-examination of Agent Zanelli,
 8   we gave them that.  They wanted specific phone calls, we gave
 9   them that.  Let them go back and do their job.  They don't
10   need any more instructions, your Honor.
11        (In open court.)
12        THE COURT:  As I indicated, ladies and gentlemen,
13   the timeline that was referenced was something that was
14   presented in argument.  Argument is not evidence.
15        If there is something, when you return to the jury
16   room, that's in evidence that you want to hear, please let us
17   know, and we can respond that way.
18        All parties are entitled to make closing arguments,
19   but what they say is not evidence.  They tried to call your
20   attention to what is evidence, so when you go back to the jury
21   room, if there is something specific which is in evidence that
22   you wish to hear again, we would be happy to accommodate your
23   request.  Okay?  Thank you.
24        (In the absence of the jury:  10:30 o'clock a.m.)
25        THE COURT:  I don't know whether we're going to get
```

1    a further request being more definite with what they want.

2         MR. REEVE:  Yes, your Honor.  I don't know, because

3    the clerks changed, we will give Patty all of our cell phone

4    numbers.  I think we'll all be very close to the courtroom.

5         THE COURT:  Okay.

6         MR. REEVE:  Because it's probably within the realm

7    of predictability that we get another note.

8         THE COURT:  Yes, I wouldn't go very far, gentlemen.

9         MR. VATTI:  Your Honor, I believe we still have that

10   motion that Mr. Reeve filed and you haven't had a chance to

11   look at yet.

12        THE COURT:  You mean the one he filed yesterday?

13   Yes, we'll have argument on that after you've had an

14   opportunity to read it.  I just read it myself this morning,

15   and if you want to make a written response or what you want to

16   do with it.

17        MR. VATTI:  No written response is necessary from

18   the government, your Honor.  I'm prepared to argue it.  If

19   your Honor has reviewed it and wants to hear argument, we can

20   do that now, unless you'd like further opportunity to review

21   it.

22        THE COURT:  I'd like further opportunity.  As I say,

23   I only saw it this morning.  I haven't had time.

24        MR. REEVE:  We're ready to proceed to argument

25   whenever your Honor is.  Just let us know.

```
 1            THE COURT:  Okay.  Don't go far now because I expect
 2    another note.
 3            MR. REEVE:  We'll stay here for now, okay?  Thank
 4    you.
 5            (Recess:  10:32 o'clock a.m. to 11:25 o'clock a.m.)
 6            THE COURT:  All right, gentlemen, we have a list of
 7    some, I don't know, 14 calls or something like that that the
 8    jury wants to hear played back.
 9            So may we have the jury?
10            MR. REEVE:  Judge, we're in agreement that we should
11    respond to the jury's questions, the 14 calls, and then once
12    they're excused, if it's acceptable to the Court, at that
13    point we can move right into the legal argument on the motion
14    that I filed last night, if that makes sense to your Honor.
15            THE COURT:  Okay.
16            (In the presence of the jury:  11:28 o'clock a.m.)
17            THE COURT:  Ladies and gentlemen, you've indicated a
18    list of phone calls which you would like to hear played back
19    again, and we are about to accommodate that request.
20            MR. SILVERMAN:  Thank you, your Honor.
21            Government's Exhibit 91 is on September 28th, 2011,
22    at 8:00 p.m.
23            (Government's Exhibit 91, an audio recording,
24    played.)
25            MR. SILVERMAN:  Government's Exhibit 92 is on
```

1    October 18th, 2011, at 3:04 p.m.

2            (Government's Exhibit 92, an audio recording,

3    played.)

4            MR. SILVERMAN:  Government's Exhibit 94 was on

5    October 20th, 2011, at 6:07 p.m.

6            (Government's Exhibit 94, an audio recording,

7    played.)

8            MR. SILVERMAN:  Government's Exhibit 96 was on

9    October 27, 2011, 5:32 p.m.

10            (Government's Exhibit 96, an audio recording,

11    played.)

12            MR. SILVERMAN:  Government's Exhibit 97 is on

13    October 30th at 1:07 p.m.

14            (Government's Exhibit 97, an audio recording,

15    played.)

16            MR. SILVERMAN:  Government's Exhibit 98 is on

17    November 1st, 2011, 8:47 p.m.

18            (Government's Exhibit 98, an audio recording,

19    played.)

20            MR. SILVERMAN:  Government's Exhibit 99, on November

21    2nd, 2011, 4:05 p.m.

22            (Government's Exhibit 99, an audio recording,

23    played.)

24            MR. SILVERMAN:  Government's Exhibit 100 was on

25    November 4th, 2011, 9:22 p.m.

```
1              (Government's Exhibit 100, an audio recording,
2    played.)
3              MR. SILVERMAN:  Government's Exhibit 101 is November
4    5th, 2011, 8:25 a.m.
5              (Government's Exhibit 101, an audio recording,
6    played.)
7              MR. SILVERMAN:  Government's Exhibit 102, it's on
8    November 8th, 5:10 p.m.
9              (Government's Exhibit 102, an audio recording,
10   played.)
11             MR. SILVERMAN:  Government's Exhibit 107, it's on
12   December 10th, 2011, at 3:51 p.m.
13             (Government's Exhibit 107, an audio recording,
14   played.)
15             MR. SILVERMAN:  Government's Exhibit 110 was on
16   December 17th, 2011, at 8:19 p.m.
17             (Government's Exhibit 110, an audio recording,
18   played.)
19             MR. SILVERMAN:  Government's Exhibit 111 is December
20   18, 2011, at 1:04 p.m.
21             (Government's Exhibit 111, an audio recording,
22   played.)
23             MR. SILVERMAN:  Government's Exhibit 112 is on
24   December 19th, 2011, at 12:39 p.m. -- I'm sorry, 12:39 a.m. --
25   p.m., 12:39 p.m.
```

```
 1              (Government's Exhibit 112, an audio recording,

 2    played.)

 3              MR. SILVERMAN:  Your Honor, that was the last call

 4    requested by the jury.

 5              THE COURT:  Thank you.

 6              (In the absence of the jury:  11:54 o'clock a.m.)

 7              MR. REEVE:  Your Honor, should we argue the motion

 8    at this time?

 9              THE COURT:  Yes.

10              MR. REEVE:  All right.  Judge, I filed yesterday, in

11    the early evening, a lengthy document.  Your Honor has had the

12    opportunity to review it this morning.  I am not going to

13    repeat anything in that document.  I rely on everything that I

14    have said there.

15              But there are three points that I want to emphasize,

16    and I'm going to be directing the Court's attention to related

17    parts of Hawkins and Wexler in order to do that.

18              First of all, your Honor, I think to summarize the

19    disagreement between the parties and my objections, which are

20    joined in by both my colleagues on behalf, so these claims are

21    being made on behalf of all three defendants.

22              The thrust of the government's argument, and indeed

23    I believe the thrust of the jury -- of the charge that your

24    Honor gave -- is it suggests to the jury that participation

25    equals membership, and that is the fatal problem with these
```

1    instructions, especially given the defense that we raised.

2          And I want to cite to your Honor a case that is

3    contained in the *Hawkins* decision that I relied on.  The name

4    of the case is *United States versus Lechuga*, L-E-C-H-U-G-A, it

5    is 994 F.2d 346, the language quoted is from 349, and this is

6    the quote:

7          "A person who sells a gun knowing that the buyer

8    intends to murder someone may or may not be an aider or

9    abetter of the murder, but he is not a conspirator because he

10   and his buyer do not have an agreement to murder anyone."

11         And that, I think, summarizes the thrust of the

12   disconnect here between defense counsel's positions, our

13   requests to charge, my argument to the jury, and the

14   government's argument.

15         And what I said to the jury, if your Honor will

16   recall, is that we are like ships passing in the night.  And

17   we were.  We were like ships passing in the night on the facts

18   and on the law.

19         The problem here is that the government made a legal

20   argument to the jury which, in my view, misstates and gives

21   the wrong impression, and your Honor has refused to give all

22   the requested charges that I've requested.

23         I requested the buyer/seller language, I had a

24   paragraph there, and what was important to me was that your

25   Honor instruct along the lines of what *Hawkins* says, which is,

1    and I'm citing from the *Hawkins* decision, and I can't see the

2    page number right now, your Honor, but in any event, right

3    under a heading, Roman numeral II, the buyer/seller rule, they

4    say, "However, while the illegal sale of narcotics is a

5    substantive crime regarding an agreement by two or more

6    persons," and then what follows is a quote from *Wexler*, this

7    is the quote from *Wexler*, "The sale agreement itself cannot be

8    the conspiracy," and then it brackets "to distribute" end

9    brackets, "for it has no separate criminal object."

10           That's what this jury does not know.  And when

11   Attorney Vatti made his hypothetical legal argument about a

12   conspiracy about three, I don't know what it was, multiple

13   bank robberies was the hypothetical, and he said:  Well, I

14   can't imagine -- again this is not a direct quote -- I can't

15   imagine that if the guy was involved in three or two or

16   whatever, and then got to the last one, that he wouldn't be

17   guilty of a conspiracy.

18           But it's much more complicated than that, because

19   what the courts would say is the government could charge a

20   conspiracy to distribute -- I'm sorry, a conspiracy to rob

21   three banks, okay?  No problems.  And they could do that and

22   then there could be substantive charges on all three bank

23   robberies, okay?  But the fact that they robbed the three

24   banks does not establish that there was a conspiracy.  For the

25   conspiracy, they would need to do more.

1           And this is the other part of my argument, the

2    difference between direct and circumstantial evidence.  The

3    government in that situation, let's say it went to the jury,

4    what the government would argue, and they're entitled to argue

5    in my opinion:

6           "Ladies and gentlemen, you can infer that the

7    similarity in conduct, the temporal proximity of these three

8    bank robberies, the fact that all of the people that are

9    involved are always the same, that it's one overarching

10   conspiracy," okay?  That would be an argument based on

11   circumstantial evidence.

12          Now, if they had direct evidence from a cooperator

13   who said, "You know what?  Before we did number one, we agreed

14   to do one, two, and three."  That would be direct evidence.

15   Either one is permissible.

16          That's what I'm saying, the evidence in this case

17   for me, on the theory of defense, is totally circumstantial

18   evidence, and just as the government is permitted to make that

19   argument, I should have been permitted to make that argument.

20   And I believe it was error for the Court not to do it.

21          And so that, those are the three issues I wanted to

22   raise.

23          So just so the Court's clear, I'm asking the Court

24   to reinstruct by giving them my requested charges one and two

25   from my January 17th filing, request number one was on the

1    buyer/seller, and your Honor just gave the factors; you didn't

2    give the preliminary.  All we have is the factors.

3          We don't tell the jury that the mere relationship of

4    buyer and seller, even if the buyer knows the seller intends

5    to redistribute, is not enough.  We haven't told the jury

6    that.

7          They know the Vatti formulation.  And I was teased

8    about Reeve on criminal cases, and I accept that teasing, but

9    you know what?  Vatti on conspiracy law erroneously told the

10   jury what conspiracy law was.  And your Honor cut the legs out

11   from under my argument by not instructing on it.  So now all

12   they have is Vatti on conspiracy law.  And I respect Attorney

13   Vatti, but he's wrong.  So that's what they have.

14         And the harm to everybody is, it undercuts the

15   entire buyer/seller, and I didn't make a buyer/seller argument

16   in my closing because I knew that the other two counsel were

17   going to do it.

18         The buyer/seller claim is important because -- to me

19   and to my defense because -- it informs the jury that

20   participation is not enough.  The buyer is participating.  The

21   buyer is helping Wilson further his drug business.  Wilson

22   wants to sell more drugs and make more money.  Whether he was

23   good at it or not is irrelevant.  That's his goal.

24         Now, when a seller comes along -- I'm sorry -- yeah,

25   when the buyer comes along, whoever it is, any of the 47, he's

1    furthering and he's participating, but he's not a member of

2    the conspiracy.  But the jury doesn't know that.

3           I'm going to end now because I violated a promise.

4    I told someone in the courtroom I was going to finish in five

5    minutes, it's now seven minutes and 45 seconds.  I'm incapable

6    of keeping quiet, and I apologize to the person to whom I made

7    that promise and broke it.

8           Thank you, your Honor.

9           THE COURT:  You didn't make it to me, but okay.

10          MR. REEVE:  No, your Honor, I didn't, and you're the

11   only one who counts.  That was a side deal, and it wasn't a

12   conspiracy, by the way.

13          MR. VATTI:  Your Honor, there's absolutely no reason

14   why you need to reinstruct the jury again.  Your Honor gave a

15   charge on conspiracy law on both of the elements; i.e., number

16   one, the existence of the conspiracy; and secondly, what

17   factors they need to consider in determining each defendant's

18   membership in the conspiracy.

19          My argument would be participation in the acts that

20   are actually the acts of the conspiracy is both direct and/or

21   circumstantial evidence of not only the existence of that

22   conspiracy, but of each defendant's membership in that

23   conspiracy.

24          I think your Honor's law, instruction on the law,

25   was very accurate.  It allowed Mr. Reeve to argue in closing

1    argument that because Mr. Santos had some ulterior purpose at

2    the conclusion of the relationship with Mr. Wilson, that

3    therefore it meant that he never had the meeting of the minds

4    even at the outset of that relationship.

5          And the government's example pushed back on that by

6    not necessarily instructing the jury, but providing an example

7    of why that defense is flawed for the very reason that in

8    order to have that ulterior motive at the end, there

9    necessarily had to be some participation in the acts and

10   objectives of the conspiracy to build up the pot of proceeds

11   that Mr. Santos then intended to steal.  That's all that was,

12   it was an example.

13         Both parties were able to use your Honor's

14   instructions to make the argument to the jury why there was a

15   meeting of the minds or why there was not.  Your Honor

16   properly instructed the jury, and I don't think there's any

17   need to reinstruct.

18         THE COURT:  Anything further?

19         MR. REEVE:  Thank you, your Honor.  Nothing further.

20         MR. VATTI:  Your Honor, can I just make one other

21   comment?  I know that Attorney Reeve rested on the papers with

22   respect to some of the other arguments he raised.

23         I do want to address the notion that somehow I

24   impermissibly commented on the defendant's right not to

25   testify.  Knowing exactly who my opponent was, I anticipated

1   that anything I said about the lack of evidence of Mr.

2   Santos's state of mind was probably going to result in that

3   argument being made against me.

4        I was very careful anticipating that argument about

5   exactly what I said to the jury, and I believe my exact words

6   to the jury were:  "There was absolutely no evidence in this

7   trial of Mr. Santos's state of mind as of October 17th or 18th

8   when he was first approached by Mr. Wilson, and none of us can

9   know what was in Mr. Santos's state of mind."

10        That was meant to comment on the fact that, from the

11   testimony of Kevin Wilson, the cross-examination of Kevin

12   Wilson, and the content of the phone calls.  There was

13   absolutely no evidence that, in mid October when he was

14   approached by Mr. Wilson, that Mr. Santos's state of mind was

15   to rip him off at some point in the distant future.  That's

16   all it did.

17        It did not comment at all on whether or not he took

18   the stand and whether he needed to take the stand.  The only

19   issue was whether the jury was able to divine from the

20   evidence that's in the record what his state of mind was in

21   mid October.

22        The second portion of that was all they were left

23   with was phone calls and text messages from December in which

24   they then would have to speculate by going backwards and

25   trying to divine from that, in December, what his state of

1    mind was back in mid October, and I encouraged the jury that

2    that would be speculation as to what was in Mr. Santos's mind.

3          So I don't believe at all that that impermissibly

4    commented on the right not to testify.

5          And Mr. Reeve also, in his closing, I believe, made

6    ample references to what he believed was in Mr. Santos's state

7    of mind, effectively putting that before the jury, although

8    your Honor did comment that the arguments of counsel is not

9    evidence.

10          So I think for those reasons, there would be no

11    basis for a mistrial on any comment by the government

12    regarding the lack of evidence as to Mr. Santos's state of

13    mind.

14          MR. REEVE:  And that does prompt me to respond, to

15    the last argument that the government made.

16          I understand, and I accept what Attorney Vatti said.

17    I think he was careful.  He was careful not to make a direct

18    comment, and I do not claim, and I think in my papers I do not

19    claim, that government counsel made a direct comment on Mr.

20    Santos's right not to testify.

21          However, in being careful, what they told the jury

22    is no one knows what was in the mind of Robert Santos in mid

23    October when, according to the government, their claim is

24    that's when he entered into the conspiracy.

25          Well, okay, that's a concession that they can't meet

1    their burden because, as we all know, and this is the other

2    part of my jury instructions that the Court did not give, this

3    is requested instruction number two from January 17th, the

4    essence of a conspiracy is a meeting of the minds.  The minds.

5          The government's burden is, in fact, to establish

6    what is in Mr. Santos's mind during the course of his alleged

7    involvement in the conspiracy.  It's their burden, not mine.

8    Not mine.

9          And so what happens is he says, "Well, there's no

10   evidence, and none of us can know."  Well, okay, that forms

11   the basis for my motion for judgment of acquittal.  It's a

12   concession on the record that the government cannot meet their

13   burden of proof.

14         Moreover, then he says to the jury:  "And you know

15   what?  Since none of us know, Attorney Reeve is asking you to

16   speculate about that."  So not only now the government has

17   abdicated their burden of proof of showing that there was a

18   meeting of the minds, which necessarily includes proof as to

19   what is in Mr. Santos's mind; that's what they have to prove.

20         Now they've taken it a step further and they've

21   said:  "Well, and by the way, Mr. Reeve can't prove what was

22   in his client's mind."  Not my job.

23         MR. VATTI:  Well, one thing that Mr. Reeve has

24   forgotten is that after saying there was no evidence of what

25   his state of mind was, and that none of us can know what was

1   in his mind as of mid October, my next argument to the jury

2   was therefore the only thing that we are left with is the

3   actions and the words of Mr. Santos from the wiretapped phone

4   calls and the episodes that he engaged in with Kevin Wilson on

5   October 19th, October 26, November 6, November 27, all of

6   which showed that he and Mr. Wilson were acquiring quantities

7   of heroin, distributing those quantities, collecting the

8   money, pooling their money together, and going down to New

9   York and getting further quantities of heroin.

10          So the point was, while we can't know what was in

11   his head, we can only judge what his state of mind was and his

12   intent was in mid October by looking at the actions and words

13   in the wiretapped calls and the video surveillances.

14          MR. REEVE:  And your Honor, in that, with respect to

15   that argument, I agree.  I agree.  But a double standard has

16   been created in this courtroom.  The government can make

17   inferential, circumstantial arguments based on all the facts

18   and circumstances, but I can't.  And the Court says no, so

19   your Honor's ruling on my theory of defense is based on there

20   was no evidence.

21          I argued from the circumstantial evidence.  Your

22   Honor made a gatekeeper function that there was insufficient

23   circumstantial evidence.  My argument was precisely the same

24   as the government's argument.

25          They said:  "Ladies and gentlemen, you can infer Mr.

1    Santos's state of mind based on all the conduct, based on all

2    the calls, based on everything you have before you."

3            But Judge, you did not give my theory of defense

4    instruction, and so what I was left with was it's okay for the

5    government to argue circumstantial evidence and, yeah, I can

6    go up and argue circumstantial evidence, but I'm out there

7    without any support from the Court.  None, zero.  I'm out in

8    the middle of the lake with my own paddle, paddling against a

9    50 mile an hour headwind.

10           And your Honor's not telling the jury that what I'm

11   doing is absolutely correct and that if in fact, at the end of

12   the day, when they look at all the evidence, when they develop

13   whatever inferences is their right to do from all those facts

14   and circumstances, if, at the end of the day, they have a

15   reasonable doubt about whether Mr. Santos was merely

16   pretending, that's the answer.  That's the answer.  And then

17   their duty is to find him not guilty.

18           That's why, respectfully, Judge, you cut the legs

19   off, the charge is not balanced, and it left me out there with

20   that headwind that made an unfair trial.

21           So for all those reasons, that's why I'm renewing my

22   motion for a mistrial.

23           THE COURT:  I'm reserving my decision, as I did

24   before.

25           We just got another note from the jury.

```
 1              MR. MORAGHAN:  Before we get that, I did adopt Mr.

 2    Reeve's filing of January 17th, the Court allowed me to adopt

 3    it.  Just so the record is clear, I'm also adopting his

 4    arguments on those issues today.

 5              THE COURT:  Fine.  You also, sir?

 6              MR. ROGAN:  I also did that when Mr. Reeve made

 7    representation that all three of us.

 8              MR. REEVE:  Judge, respectfully, you can't reserve.

 9    You have to rule.  I've asked you to rule on these things.  At

10    the very least, you have to rule on my request to reinstruct

11    the jury.  We can't just leave that hanging.  I'm asking you

12    to rule right now.

13              THE COURT:  To reinstruct the jury, give it to me

14    again.

15              MR. REEVE:  My request to charge number one, number

16    two, and my theory of defense.  It's either yes or no.

17              THE COURT:  I'll rule on this motion after lunch,

18    okay?  In the meantime, the jury wants to hear --

19              MR. REEVE:  Judge, I hate to interrupt you, but,

20    okay, I understand, but I just want the record to reflect that

21    the jury's been deliberating since 9:00 o'clock this morning,

22    and last night when I filed this, I said if you instruct, it's

23    going to be too little, too late.

24              They're now under the wrong, from my perspective,

25    the misimpression about what the law really is and we're
```

1   allowing them to continue to deliberate, and I respectfully

2   object to any delays.

3          MR. VATTI:  Judge, the only thing I just wanted to

4   add for the record is that your Honor instructed the jury on

5   inferences, and how inferences can be drawn from

6   circumstantial evidence based on established facts in the

7   record.

8          Mr. Reeve was able to take all of the evidence he

9   put in from December of 2011 -- the text messages, the phone

10  calls, the testimony of Kevin Wilson -- as to what was

11  happening between him and Mr. Santos in December of 2011, to

12  then argue that that indicated an inference that the jury

13  should draw of what his intent was back in mid October.  He

14  was able to make that argument.  Nobody objected to that

15  argument.  So therefore, based on what your Honor has already

16  instructed, his defense is before the jury.

17         Our counter-arguments are before the jury, and I see

18  no reason to at this point reinstruct the jury on what they

19  already know and what was an accurate recitation of Second

20  Circuit law on conspiracy.

21         MR. REEVE:  Judge, I'm not going to respond to that;

22  I already have.  I've responded.  I think the record's clear.

23         THE COURT:  In the meantime, the jury wants to hear

24  call No. 111, I think that's what it says.  "Listen to call

25  No. 111, and then they say 12/18/11."  Is that the date of the

```
 1    call, gentlemen?
 2              MR. SILVERMAN:  I believe so, your Honor.
 3              THE COURT:  1:00 p.m.?  Can we have them come in,
 4    hear that call, then we'll break for lunch.
 5              MR. SILVERMAN:  Yes, your Honor.
 6              MR. ROGAN:  Yes, your Honor.
 7              MR. REEVE:  Yes, your Honor.  And I take it your
 8    Honor is adhering -- you want the lunch break, I understand, I
 9    get it.  I object.
10              THE COURT:  Okay.  You don't want anybody to have
11    lunch?
12              MR. REEVE:  No, I don't object to you having lunch.
13              THE COURT:  I'm surprised, Mr. Reeve.  I expect you
14    would object to almost anything.
15              MR. REEVE:  I like to have lunch, too.  I appreciate
16    the lunch break.
17              (In the presence of the jury:  12:18 o'clock p.m.)
18              THE COURT:  Ladies and gentlemen, you've asked to
19    hear another recording, and we're going to accommodate you.
20    We are going to accede to your request.
21              MR. SILVERMAN:  Your Honor, I understand the jury
22    would like to hear Government's Exhibit 111 again, December
23    18th at 1:04 p.m.
24              (Government's Exhibit 111, an audio recording,
25    played.)
```

```
 1              THE COURT:  All right, ladies and gentlemen.  Has

 2    your lunch arrived yet?  No?  Well, it will be shortly.  I

 3    suggest you have your luncheon break, then resume your

 4    deliberations, okay?

 5              (In the absence of the jury:  12:27 o'clock p.m.)

 6              THE COURT:  Is there anything further on the motion?

 7              MR. VATTI:  The only other point, we discussed this

 8    whole issue of the defense theory on numerous occasions.  We

 9    had it in chambers where I used the example of bank robberies,

10    we discussed the whole validity of the defense ad nauseam back

11    and forth and back and forth, and your Honor ruled that it

12    didn't have anyplace in this case because there was no

13    foundation in the evidence for it.

14              I don't think there's anything that has changed

15    about that.  The parties have made their arguments and

16    closings, the closings themselves are not evidence, and that

17    doesn't change anything about the nature of the evidence.

18              Everyone made their arguments on Mr. Santos's intent

19    and state of mind and whether he entered the conspiracy or

20    not, and I don't see any reason to reinstruct at this point.

21              MR. REEVE:  Your Honor, the Court will be shocked,

22    but I'm not going to respond.

23              MR. VATTI:  I'm shocked.

24              MR. REEVE:  But --

25              MR. VATTI:  I am contemplating a motion that I will
```

```
 1   file, your Honor, to preclude Mr. Reeve from making any other

 2   motions in this trial.

 3            THE COURT:  That might well be granted.

 4            MR. REEVE:  My only response, your Honor, is silence

 5   should not be perceived as acquiescence.

 6            THE COURT:  I understand that, sir, and I have

 7   reserved decision on your motion for judgment of acquittal,

 8   and I don't intend to recharge the jury.

 9            MR. REEVE:  Understood, your Honor.  Understood.

10            THE COURT:  Okay?  Have a good lunch.

11            (Recess:  12:29 o'clock p.m. to 1:58 o'clock p.m.,

12   in the absence of the jury.)

13            THE COURT:  For the record, we have a note from the

14   jury, "We would like to hear calls 99 and 100."

15            MR. MORAGHAN:  Again.

16            THE COURT:  I think it's very significant that they

17   know precisely which call they want to hear, or think they do,

18   anyway.  They must have paid good attention to what was going

19   on.

20            MR. MORAGHAN:  Yes.

21            MR. REEVE:  And the fact that we gave them the

22   exhibit lists has really helped them focus.  That is a

23   chronology that they have.

24            We were talking earlier about a need to get into

25   PowerPoint, but we gave them kind of a roadmap through those
```

1   exhibit lists.

2           MR. VATTI:  Yes.

3           THE COURT:  I think they know what they're doing out

4   there.  They obviously have in mind everything that has

5   happened during the course of this trial, that was on the

6   record before them.

7           MR. VATTI:  They were so impressed with Mr.

8   Silverman's closing argument, they wanted to hear it again.

9   That was definitely a first.

10          MR. REEVE:  Maybe they just wanted to hear it

11  because they just couldn't believe some of what he said.

12          THE COURT:  For the record, there is a request for a

13  mistrial, which I am denying.

14          There's a request that I reinstruct the jury, which

15  I am denying.

16          And I am reserving on the motion for judgment of

17  acquittal.

18          MR. REEVE:  Yes.  Is your Honor ruling on Mr.

19  Vatti's request that I be prohibited from filing any more

20  pleas in this case?

21          (Discussion held off the record.)

22          THE COURT:  Well, this is an interesting one.  "We

23  do not need the other phone calls, and we reached a verdict.

24  Thank you."

25          (In the presence of the jury:  2:03 o'clock p.m.)

1          THE COURT:  Good afternoon.  Ladies and gentlemen,

2     I've got your note in which you indicate that you do not need

3     to hear the other phone calls that you previously requested,

4     and you have arrived at a verdict, correct?

5          Would the foreperson please give the verdict forms

6     to the clerk?

7          All right.  Would you read the verdict?

8          THE CLERK:  In the case of the United States of

9     America versus Richard Anderson.  Criminal No. 3:12CR104

10    assigned to Judge Burns.

11         As to Count One.  Paragraph 1.  As to the charge in

12    Count One of conspiracy to distribute and to possess with

13    intent to distribute narcotics, we the jury unanimously find

14    Richard Anderson guilty.

15         Question 2.  Does the jury unanimously find that the

16    quantity attributable to Richard Anderson's direct knowledge

17    and involvement in the conspiracy charged in Count One was 28

18    grams or more of a mixture or substance containing a

19    detectable amount of cocaine base, crack cocaine?

20         Answer:  Yes.

21         Question 3.  Does the jury unanimously find that the

22    quantity attributable to Richard Anderson's direct knowledge

23    and involvement in the conspiracy charged in Count One was

24    less than 28 grams of a mixture or substance containing a

25    detectable amount of crack cocaine, cocaine base?

1          Answer:  No.

2          Signed by the foreperson February 6, 2014.

3          In the case of United States of America versus

4    Philip Bryant.  Criminal No. 3:12CR104 assigned to Judge

5    Burns.  Verdict.

6          As to Count One.  As to the charge in Count One of

7    conspiracy to distribute and to possess with intent to

8    distribute narcotics, we the jury unanimously find Philip

9    Bryant guilty.

10         Paragraph 2.  Does the jury unanimously find that

11   the quantity attributable to Philip Bryant's direct knowledge

12   and involvement in the conspiracy charged in Count One was 28

13   grams or more of a mixture or substance containing a

14   detectable amount of cocaine base, crack cocaine?

15         Answer:  No.

16         Does the jury unanimously find that the quantity

17   attributable to direct knowledge and involvement in the

18   conspiracy charged in Count One was less than 28 grams of a

19   mixture or substance containing a detectable amount of cocaine

20   base, crack cocaine?

21         Yes.

22         Question 4.  Does the jury unanimously find that the

23   quantity attributable to Philip Bryant's direct knowledge and

24   involvement in the conspiracy charged in Count One was a

25   mixture or substance containing a detectable amount of heroin?

```
1              Answer:  Yes.

2              Question 5.  Does the jury unanimously find that the

3    quantity attributable to Philip Bryant's direct knowledge and

4    involvement in the conspiracy charged in Count One was a

5    mixture or substance containing a detectable amount of

6    cocaine?

7              Answer:  Yes.

8              Dated by the foreperson on February 6, 2014.

9              In the case of the United States of America versus

10   Robert Santos.  Criminal No. 3:12CR104 assigned to Judge

11   Burns.

12             Verdict form.

13             Count One.  Paragraph 1.  As to the charge in Count

14   One of conspiracy to distribute and to possess with intent to

15   distribute narcotics, we the jury unanimously find Robert

16   Santos guilty.

17             Question 2.  Does the jury unanimously find that the

18   quantity attributable to Robert Santos's direct knowledge and

19   involvement in the conspiracy charged in Count One was 100

20   grams or more of a mixture or substance containing a

21   detectable amount of heroin?

22             Answer:  Yes.

23             Question 3.  Does the jury unanimously find that the

24   quantity attributable to Robert Santos's knowledge and

25   involvement in the conspiracy charged in Count One was less
```

1    than 100 grams of a mixture or substance containing a

2    detectable amount of heroin?

3            Answer:  No.

4            Signed by the foreperson February 6, 2014.

5            THE COURT:  Is that your verdict, ladies and

6    gentlemen?

7            JURORS:  Yes.

8            Gentlemen, please approach the bench.

9            (At the side bar.)

10           THE COURT:  I want to be certain that for the

11   purposes of *Alleyne* that we have proper quantity requirements.

12           MR. VATTI:  We do your Honor.

13           THE COURT:  Do we?

14           MR. VATTI:  Yes.

15           THE COURT:  Does the jury unanimously find Richard

16   Anderson less than 28 grams and the answer was no, which means

17   it was more than 28 grams.

18           MR. VATTI:  And they checked, they gave us yes.

19   Look at question No. 2, your Honor.

20           THE COURT:  That's detectable amount.  For *Alleyne,*

21   I need to know how much.

22           MR. SILVERMAN:  Question 2 specifies 28 grams or

23   more.

24           MR. VATTI:  That's sufficient for *Alleyne*.

25           THE COURT:  On Bryant, the answer to that question

1   is no.

2              MR. MORAGHAN:  Correct.

3              MR. VATTI:  It means Philip Bryant is (b)(1)(C),

4   there's no mandatory minimum.

5              THE COURT:  They find that he is less than 28 grams.

6              MR. MORAGHAN:  That's appropriate.

7              THE COURT:  Yes.  I just want to be sure that we met

8   all the requirements of that case.

9              MR. REEVE:  On behalf of Mr. Santos, I think the

10  jury has clearly spoken, and there's no issues with respect to

11  the verdict, and I think that's all that the jury has to say.

12             MR. SILVERMAN:  Agreed.

13             THE COURT:  Under *Alleyne*, the jury has to find

14  anything that affects the sentence imposed.  That's why I'm

15  asking the questions.

16             MR. VATTI:  The forms entirely comport with *Alleyne*,

17  your Honor.

18             MR. REEVE:  We agree.

19             THE COURT:  Thank you.

20             MR. REEVE:  We know that we have a right to ask for

21  individual polling of the jurors.

22             THE COURT:  Yes.

23             MR. REEVE:  We have consulted among ourselves, we

24  are not asking that you do that.

25             THE COURT:  Okay.

```
1              MR. REEVE:  We are satisfied.  You don't have to ask

2    them to stand up individually and say this is their verdict,

3    okay?

4              THE COURT:  Okay.  As long as you agree on that.

5              MR. REEVE:  We all agree, thank you.

6              (In open court.)

7              THE COURT:  All right, ladies and gentlemen, I want

8    to thank you on my behalf and on behalf of everyone involved

9    in this trial for the careful attention you gave to this case,

10   and for your verdict today.  Thank you very much.  And I'm

11   saying that on behalf of all counsel and myself, and

12   defendants.  Thank you.

13              (In the absence of the jury:  2:13 o'clock p.m.)

14              MR. REEVE:  Judge, could we be heard on a few

15   matters?

16              THE COURT:  Yes.  Why should today be different?

17              MR. REEVE:  Judge, I think I'm speaking on behalf of

18   all defense counsel and upon consent of the government.  As

19   your Honor knows, and I don't have the Federal Rule book in

20   front of me, it used to be that we had to file motions for new

21   trial and motions for judgment of acquittal I think it was

22   within seven days, it might be 14 now.

23              I know that there 's kind of a jurisdictional issue,

24   that is that during the period of time in the rule, that it's

25   during that period of time that your Honor can extend it, but
```

1    it has to be within that period of time.

2            On consent of all the parties, for various reasons

3    involving scheduling, we might want to seek portions of the

4    transcript, we are requesting that we be given three months

5    from today to file post trial motions for new trial.

6            THE COURT:  Three months?

7            MR. REEVE:  Yes, your Honor.  And part of that is

8    because all of us have other commitments after this trial, and

9    I know that Mr. Rogan, for example, has a personal commitment

10   out of the country for a few weeks, and we're trying to

11   coordinate.  We discussed it with all of our clients and

12   everyone is in agreement that we want the time to do justice.

13           I think your Honor indicated earlier, made a comment

14   of, I think something to the effect of, the Second Circuit

15   will have fun with this case, or a lot to consider or

16   something like that.

17           As your Honor knows, there are a myriad of issues

18   that have been raised here.

19           THE COURT:  Yes.

20           MR. REEVE:  And I think it's incumbent upon us to

21   raise them fairly before your Honor and thoroughly, and it's

22   going to take some time, it's going to take some effort, it's

23   going to take some marshalling, it's going to take some

24   additional research and some coordination.

25           I think what we would probably hope to do is, to the

```
 1    degree we can, file a brief, a collective brief, that raises

 2    these issues on behalf of our individual clients, if we can do

 3    justice to our clients.  We don't want to file, you know,

 4    multiple memoranda that the Court has to review each one's

 5    memorandums.

 6            THE COURT:  Memoranda.

 7            MR. REEVE:  Yes, memoranda.  Thank you.

 8            THE COURT:  You're welcome.

 9            MR. REEVE:  So I know that's a lengthy request.

10    Obviously, Judge, if we can get it done before that, we will

11    do it.  But I think because of the way the rule is structured,

12    we have to get you to set a date now.  Because, like, three

13    weeks from now or a month from now if we say we're not going

14    to be able to make that deadline, I'm not sure --

15            THE COURT:  You're talking about May.  Three months,

16    you said.  March, April, May.

17            MR. REEVE:  May 5th or whatever that falls on.

18    That's what I'm asking for.

19            MR. SILVERMAN:  Your Honor, the government has no

20    objection to that request.  I just don't know whether the

21    defendants have considered sentencing.  Ordinarily, under the

22    local rules, they would be sentenced 84 days after the plea or

23    conviction, which obviously is shorter than the three-month

24    time period they requested.  We have no objection to the

25    request for a three-month time.
```

```
 1            THE COURT:  We have to have their waiver.

 2            MR. SILVERMAN:  Assuming they want to waive their

 3    sentencing until after that motion is filed and ruled upon.

 4            MR. MORAGHAN:  I can speak for all defendants that

 5    we will waive that time period for the sentence to be imposed.

 6            MR. REEVE:  Just for the record, I discussed this

 7    with Mr. Santos, and he waives his right to the 84-day

 8    sentencing period, and understands that this will delay the

 9    sentencing until after the pleadings are filed.

10            The government's obviously going to want to respond,

11    and then your Honor's going to have to rule.  We understand

12    that.

13            MR. ROGAN:  And I've also, your Honor, spoken with

14    Mr. Anderson, and he waives the 84-day period as well, your

15    Honor.

16            THE COURT:  Well, we've got Mr. Santos, Mr.

17    Anderson.  How about Mr. Bryant?

18            MR. MORAGHAN:  Yes, I did discuss this with him,

19    your Honor.  He's in agreement with that, and he waives the

20    84-day time limit.

21            THE COURT:  So we're in May, right?

22            MR. REEVE:  Yes, your Honor.  Whatever weekday is on

23    or about May 5th, if that's a weekday, I would ask for May

24    5th.

25            THE COURT:  Yes.  Would you check the calendar?  I'm
```

1    sure I haven't got anything for May 5th.  Okay, May 5th for

2    sentence.

3            MR. SILVERMAN:  May 5th will be the deadline for the

4    filing of the motion, and sentencing will be at some point

5    thereafter.

6            MR. REEVE:  Right, and I think at this point, if

7    your Honor please, I think we can just agree not to set a

8    sentencing schedule now, but to begin the presentence report

9    process, probation officers will be assigned.  We can move

10   forward with that, so that we're ready for sentencing.  Once

11   your Honor issues a ruling, I think then we can request

12   sentencing dates at that time.

13           MR. VATTI:  I don't think the probation office will

14   do a PSR interview and start in on the report unless there's a

15   specific date, so I would just suggest that for now, we put a

16   sentencing date perhaps in June --

17           MR. REEVE:  That's fine.

18           MR. VATTI:  -- for each of the three defendants, and

19   that way at least probation will start the process.

20           THE COURT:  You're suggesting June?

21           MR. VATTI:  Yes.

22           MR. REEVE:  As just a calendaring date, I think is

23   Attorney Vatti's suggestion.  We agree, I think that's a wise

24   suggestion.

25           MR. VATTI:  And if further continuances are needed

1   at that time, we can do that.

2           THE COURT:  How about June 3rd?

3           MR. REEVE:  That's fine.

4           MR. VATTI:  That's fine.

5           THE COURT:  Will you check, Patty, if I have

6   anything?

7           THE CLERK:  No, you have nothing, Judge.

8           THE COURT:  June 3rd at 9:00 o'clock.

9           MR. SILVERMAN:  Your Honor, would that be 9:00

10  o'clock for Mr. Anderson, 10:00 o'clock for Mr. Bryant, and

11  11:00 o'clock for Mr. Santos, just for purposes of the

12  sentencing?

13          THE COURT:  Yes.

14          MR. SILVERMAN:  Thank you, your Honor.

15          MR. REEVE:  Thank you, your Honor.

16          MR. MORAGHAN:  Thank you, your Honor.

17          THE COURT:  All right.  One of the defendants is not

18  in custody, right?

19          MR. REEVE:  Mr. Santos is at liberty.  The other two

20  individuals are in custody.  I would like to be heard on that.

21  But I think at this point, there's a number of marshals here

22  and they might want to take Mr. Bryant and Mr. Anderson, who

23  are in custody, downstairs so that they can begin their

24  process.  I certainly have no objection to that.  And then I

25  can be heard on the bail issue with respect to Mr. Santos, if

1    the Court please.

2           THE COURT:  Right.  Thank you.

3           MR. MORAGHAN:  I have no objection to that, your

4    Honor.

5           MR. ROGAN:  That's fine, your Honor.

6           MR. SILVERMAN:  Your Honor, can we have one moment

7    before the bail motion?

8           THE COURT:  Yes.

9           MR. VATTI:  Your Honor, may I have a moment to speak

10   with Mr. Reeve out in the hallway?

11          THE COURT:  Yes.

12          (In the absence of Mr. Anderson and Mr. Bryant:

13   2:22 o'clock p.m.)

14          (Counsel conferring.)

15          MR. REEVE:  May I proceed, your Honor?

16          THE COURT:  Please.

17          MR. REEVE:  I am making a request that I know the

18   Court might not always grant.  I can't give you the date, but

19   Mr. Santos might remember.  He turned himself in on this

20   indictment sometime in July of 2012, if memory serves.

21          He was incarcerated until earlier this year, and I

22   can't, again I can't, give an exact date, but there was a

23   contested bond hearing.  And at that hearing, which was held

24   before Magistrate Judge Margolis, Magistrate Judge Margolis

25   appointed -- and the bond form I think specifies -- there are

1    three third-party custodians, including Genita Santos who has

2    been here in court every day, she worked, her career was

3    working as a correctional officer for the Connecticut

4    Department of Corrections.

5              THE COURT:  Yes.

6              MR. REEVE:  And when we were before Magistrate

7    Margolis, and Attorney Silverman will recall, that she said,

8    "Frankly, I have never seen a more suitable third-party

9    custodian."  So the condition is, and the conditions have been

10   from day one, that either Genita Santos or the other two

11   third-party custodians, one of them, needs to be with him in

12   his home.

13             And since then, there have been changes, on

14   agreement, in the bond.  At first, it was 24 hours in the

15   house.  Then Mr. Santos, through diligent efforts, made a

16   proposal with a community group called Believe in Me

17   Empowerment Inc.  This is a group that works with families and

18   young people in New Haven to steer them in the right

19   direction.  The person who was the director of that program,

20   James Walker, has submitted letters that have been shared with

21   the United States Attorney's Office.

22             And since he was authorized to do that, Mr. Santos

23   has been working at that program as a volunteer, and Mr.

24   Walker became, in effect, a third-party custodian -- a fourth

25   third-party custodian.  If memory serves me, he also signed as

1  a fourth third-party custodian in this case.

2          Mr. Santos's pretrial supervision has been

3  supervised by Nicole Owens of the United States Probation

4  Office, and as far as I know, and as far as I think government

5  counsel knows, there have been absolutely no problems with Mr.

6  Santos's continued -- I misspoke.  There have been no problems

7  during the period of time that he's been out.  He has

8  electronic monitoring.

9          Other than the times that he's had to change that

10  because of the court schedule, he has complied with that.

11  There have been no violations of the bond.

12          Now, my understanding is that the position -- and I

13  think your Honor's familiar with this, that the position --

14  that the government has taken in this case, and it's a

15  position, frankly, Judge, that I applaud -- is that if someone

16  is out on bond and they enter a guilty plea in this case, the

17  government does not seek their detention at that time.  They

18  have allowed those individuals to continue on release, so long

19  as they have complied with all the conditions of release.

20  That applies here.

21          I am hoping that the government will agree that it

22  should not be a different policy because someone exercises

23  their right to go to trial, unless something happens during

24  the course of trial which suggests there's a problem.

25          I would suggest to your Honor that -- and I'm sure

1    your Honor has observed Mr. Santos during the trial from time

2    to time.  There have been a few times where he has a bad

3    habit, he smokes cigarettes.  I'm trying to get him to stop

4    that, but he won't.  But he's been outside, smoking a

5    cigarette, and he might have been a moment late on two

6    occasions.

7         But he has been here.  He has conducted himself like

8    a gentleman.  He has made no outbursts of any kind during this

9    trial.  He has been polite at all times to everyone in this

10   courtroom, and I think his behavior speaks for itself.

11        As part of the bond, his mother has put up the only

12   asset she has now.  She's not employed.  She can't get a job

13   right now.  She would like to be working and making money, but

14   she has to be with her son pursuant to the court order, and

15   that is an obligation she has taken very seriously.  So she

16   has not been working.

17        Her home is the only asset that she has.  She gets

18   her pension from the State of Connecticut, and that's how she

19   is living.  She has equity in that home.  Part of the bond

20   package is that her property was posted in this case.  If

21   Robert Santos leaves, if he flees, his mother loses her house.

22   That's the reality, and he knows that.

23        And I think under all those circumstances:  His

24   volunteer work at an organization that's doing very good

25   things in the community, that I know the U.S. Attorney's

1    Office has interfaced with that organization in the past and

2    they're familiar with Mr. Walker and the work that he does,

3    all of the conditions of release, I think all of this

4    establishes exceptional circumstances which, you know, which,

5    number one, establishes that Mr. Santos will appear whenever

6    he is required, just as he has been doing the last three

7    weeks.

8              And, in addition, it reasonably assures the safety

9    of the community.

10             And I am making this request on his behalf because,

11   frankly, I think it's the right thing to do.  I think it is

12   warranted by his behavior.

13             I can never guarantee anything to any court, and I

14   think your Honor knows I never do.  But as much as I can

15   guarantee that someone's not going to leave, I can tell you,

16   Mr. Santos is not going to allow his mother to lose her home,

17   the one asset that she has in this world right now, other than

18   her monthly pension check from the State of Connecticut.  He's

19   not going to do that.

20             If at any point he feels like I don't have any more

21   obligation to the court system -- and he will never get to

22   that point, but if he did -- the backup situation is that he

23   knows that if he fails to appear whenever, that he's literally

24   going to be taking his mother's home from her.  He is not

25   going to do that.

1          So for all of those reasons, I am asking your Honor

2     to continue his release on bond under the same conditions that

3     he has been complying with since the day of his release, and

4     again, I wish I had it, it's in the record as to what date he

5     was released, but I just don't have it in my memory, your

6     Honor.  I should, and I apologize.

7          So that's my position.  Thank you.

8          MR. VATTI:  Your Honor, I'm not going to get into

9     what our office's policies are on moving to remand whether

10    it's a guilty plea or remand after trial.

11         I'm only going to say under the circumstances of

12    this case that I'm familiar with, including the fact that the

13    bond currently is secured by a deed on the mother's home and

14    that there is significant equity in that home, I am not

15    opposed to it.

16         However, if there are changed circumstances, I would

17    reserve the right to move to remand at that time.

18         THE COURT:  All right.

19         MR. REEVE:  And, your Honor, just so that the record

20    is clear, we have had informal discussions, and we have agreed

21    that if the government believes there is a need to remand or

22    to revisit this, it is very likely that I would not contest

23    that under all these circumstances.

24         We have tried to work this out, and now I am hoping

25    that you will agree with both parties under all the

1    exceptional circumstances in this case.

2              Thank you.

3              THE COURT:  The government has no objection to Mr.

4    Reeve's request?

5              MR. VATTI:  Not at this time, your Honor.  As I

6    said, I would reserve the need to remand later.

7              THE COURT:  I will agree, subject to a motion to

8    remand later.

9              And the other two gentlemen?

10             MR. MORAGHAN:  They are remanded, your Honor, and we

11   will not make an argument that they should be released.

12             THE COURT:  Thank you.  Very well, we will keep with

13   the status quo.

14             I assume that the gentlemen know that the period of

15   time in which they are held will be deducted from their

16   service of their sentence, whatever it is, so they're not

17   losing very much that way.

18             MR. MORAGHAN:  Yes, thank you.

19             MR. SILVERMAN:  Thank you, your Honor.

20             THE COURT:  Are we finished?

21             MR. SILVERMAN:  Nothing further from the government.

22             MR. VATTI:  Not for the government, your Honor.

23             THE COURT:  All right.  Then we are going to get the

24   motions filed by May 5th, correct?

25             MR. MORAGHAN:  Yes, your Honor.

1           MR. REEVE:  Thank you for your considerations, your

2    Honor.

3               (2:35 o'clock p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17        COURT REPORTER'S TRANSCRIPT CERTIFICATE

18           I hereby certify that the within

19      and foregoing is a true and correct

20      transcript taken from the proceedings

21      in the above-entitled matter.

22

23                      /s/ Thea Finkelstein
                        Official Court Reporter

24

25   Dated: _____